[Civ. No. 25676.   Second Dist., Div. Two.   June 4, 1962.]

THE POWERS REGULATOR COMPANY, Plaintiff and Respondent, v. SEABOARD SURETY COMPANY OF NEW YORK, Defendant and Appellant.

340

Miller, Nisson, Kogler & Wenke, Wallace & Wallace, W. W. Wallace and Allan W. Wallace for Defendant and Appellant.

Spray, Gould & Bowers for Plaintiff and Respondent.

ASHBURN, J.—Defendant Seaboard Surety Company of New York appeals from judgment in favor of plaintiff Powers Regulator Company in an action brought to recover $9,868, with interest, upon a public works bond given by a general contractor, Allison Honer Company, and said surety company pursuant to sections 4200 et seq., Government Code,[1] in connection with the construction for the County of Orange of a psychiatric building for the county hospital.

Allison Honer Company, the prime contractor, made a subcontract with Clark Company to do that part of the work consisting of installation of plumbing, heating and ventilating systems, and Clark Company in turn subcontracted with plaintiff Powers Regulator Company to install a pneumatic temperature control system in the building.[2] As to payment,

[1]Gov. Code, § 4200: ''Every person to whom is awarded a contract involving an expenditure in excess of one thousand dollars ($1,000) for the improvement, erection or construction of any building, road, bridge or other structure, excavating, or other mechanical work for the State, or for any political subdivision or agency of the State shall, before entering upon the performance of the work, file a good and sufficient bond with the officer or body by whom the contract was awarded.''

Gov. Code, § 4204: ''To be approved, the contractor's bond shall provide that if the person or his subcontractors, fail to pay for any materials, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done, or for any work or labor thereon of any kind, or for amounts due under the Unemployment Insurance Act with respect to such work or labor, that *the surety or sureties will pay* for the same, in an amount not exceeding the sum specified in the bond, and also, in case suit is brought upon the bond, a reasonable attorney's fee, to be fixed by the court.'' (Emphasis added.)

Gov. Code, § 4205: ''To be approved, the contractor's bond shall by its terms inure to the benefit of any and all persons entitled to file claims under Section 1192.1 of the Code of Civil Procedure so as to give a right of action to them or their assigns in any suit brought upon the bond.''

Gov. Code, § 4206: ''Suit against the surety or sureties on the contractor's bond may be brought by any claimant, or his assign, at any time after the claimant has ceased to perform labor or furnish material, or both, and until the expiration of six months after the period in which verified claims may be filed as provided in Section 1192.1 of the Code of Civil Procedure.''

[2]The Allison Honer contract with Clark (in the form of a purchase order) required it to furnish all labor and materials for installation of plumbing, heating and ventilating systems, and incorporated by

the Allison Honer contract with Clark says: "Payment will be made each month for 90% of the work completed the previous month as certified by the Owner's Representative, such payment to be made on or before the 10th prox., and final payment in full will be made within 30 days after final acceptance."

The subcontract between Clark and Powers contains these terms of payment: "All progress payments, less 10% retainer, and the final 10% retainer payment, as approved by the Architect/Owner will be paid in full to Powers Regulator Company, on or before 5 days after the reciept of each payment by Clark Company, from the General Contractor, Allison Honer Company, Santa Ana, California. Please invoice us for all progress payments, on or about the 20th day of each month, as of the last day of each month. Mail (3) copies of invoices to Clark Company."

After the work had been accepted on February 16, 1959, Mr. Honer, partner in Allison Honer Company, instructed Mr. Clark (owner of Clark Company) to get releases from his major subcontractors and suppliers. Clark prepared a release to be signed by Powers Regulator Company and mailed it to that company's accountant with the explanation that he would have to have it in order to get his money, and that upon its receipt duly signed Clark would get its money and pay Powers the amount due it, $9,868. On March 10th Powers executed and delivered the release, which reads as follows: "Powers Regulator Company, 3200 Temple Street, Los Angeles 26, Calif. hereby releases Allison Honer Company, 312 North Main St. Santa Ana, Calif., Contractors, and the property known and described as Psychiatric Building at Orange County General Hospital, in the city of Placentia Ave., County of Orange, State of California, from all claims and demands for or on account of materials and/or labor and material furnished by the undersigned to and including the 30th day of November, 1958, purchased by the Clark Company, 188 So. 'I' Street, San Bernardino, Calif. Except 10% retainer witheld per P.O. No. C-167-6, for use in the property above described. Powers Regulator Company by: S.J. Wallace, title: Ass't. Bkpr."

reference "the General and Special Conditions of the Contract Specifications, and the Terms of the Prime Contract Agreement, insofar as they apply to the above items of work"; this prime contract is not in the record before us, as it was not offered in evidence and we do not know the real purport of this incorporation by reference.

Clark got its money on March 23, 1959, but never paid Powers. Mr. Honer testified he would not have paid Clark if he had not received the release, or would have made the payment by check payable jointly to Clark and Powers. This joint check procedure had been followed in several instances but not with Clark, and there is no evidence that Powers knew of such practice.

It is now claimed by appellant Surety Company that Powers is estopped to assert its claim in its action against appellant because Allison Honer gave up its right to make payment by joint check, thereby suffered a detriment and that a defense of estoppel arose in favor of Allison Honer, which defense inured to the benefit of Seaboard Surety Company as its surety.

Section 4204, Government Code, provided: "To be approved, the contractor's bond shall provide that if the person or his subcontractors, fail to pay for any materials, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done, or for any work or labor thereon of any kind . . . that the *surety or sureties will pay for the same,* in an amount not exceeding the sum specified in the bond, and also, in case suit is brought upon the bond, a reasonable attorney's fee, to be fixed by the court.'' (Emphasis added.) The bond in suit is set forth in full in the complaint and in footnote 3 hereof.[3] The condition of the

---

[3] "Bond No. 522258 LA KNOW ALL MEN BY THESE PRESENTS: That we, ALLISON HONER Co. as Principal, and the SEABOARD SURETY COMPANY, a corporation duly organized and doing business under and by virtue of the laws of the State of New York, and duly licensed for the purpose of making, guaranteeing or becoming sole surety upon bonds or undertakings required or authorized by the laws of the said State, as Surety, are held and firmly bound unto any and all materialmen, persons, companies or corporations furnishing materials, provisions, provender or other supplies used in, upon, for or about the performance of the work contracted to be executed or performed under the contract hereinafter mentioned, and all persons, companies or corporations renting or hiring teams, or implements or machinery, for or contributing to said work to be done, and all persons who perform work or labor upon the same, and all persons who supply both work and materials, and whose claim has not been paid by the contractor, company or corporation, in the just and full sum of FIVE HUNDRED SEVEN THOUSAND AND No/100————DOLLARS ($507,000), for the payment whereof well and truly to be made, said PRINCIPAL, and SURETY bind themselves, their heirs, administrators, successors and assigns, jointly and severally, firmly by these presents.

"THE CONDITION OF THE FOREGOING OBLIGATION IS SUCH THAT, WHEREAS, the above bounden PRINCIPAL has entered into a contract, dated November 6th, 1957, with ORANGE COUNTY BOARD OF SUPERVISORS to do

bond is: "Now, THEREFORE, if the above bounden PRINCIPAL, contractor, person, company or corporation, *or his or its sub-contractor*, fails to pay for any materials, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done, or for any work or labor done thereon of any kind . . . with respect to such work or labor. *the SURETY on this bond bill pay* the same in an amount not exceeding the sum specified in this bond. . . ." (Emphasis added.) (The word "bill" is obviously a misprint meaning "will.") Neither the statute nor the bond requires the "principal" on the bond to pay—this for the obvious reason that the bond is designed primarily to protect materialmen and others who have no right to look to the general contractor for their money, persons with whom the general contractor has no contractual relationship.[4]

■ *Pneucrete Corp.* v. *United States Fid. & Guar. Co.*, 7 Cal.App.2d 733, 736 [46 P.2d 1000]: "The purpose of the bond provision of the Public Works Act, we believe, was to give to materialmen and laborers who furnish material for and render services upon public works an additional means of receiving compensation." ■ Page 737: "No lien being

and perform the following work, to wit: construction of a Psychiatric Building at Orange County General Hospital, 12071 Santa Ana Boulevard, Orange, California.

"Now, THEREFORE, if the above bounden PRINCIPAL, contractor, person, company or corporation, or his or its subcontractor, fails to pay for any materials, provisions, provender or other supplies, or teams, used in, upon, for or about the performance of the work contracted to be done, or for any work or labor done thereon of any kind, including any amount due under the Unemployment Insurance Act of the State of California, with respect to such work or labor, the *SURETY on this bond bill pay the same* in an amount not exceeding the sum specified in this bond, and also in case suit is brought upon this bond, a reasonable attorney's fee to be fixed by the court as costs in said suit and to be included in the judgment therein rendered. (Emphasis added.)

"PROVIDED, HOWEVER, that the obligation of the SURETY hereunder shall only inure to the benefit of those persons entitled to file claims under the provisions of Section 1184e (now Section 1192.1) of the Code of Civil Procedure and Chapter 3 of Division 5, Title I of the Government Code of the State of California, and shall give a right of action to said persons or to their assigns in any suit that shall be brought upon this bond.

"SIGNED AND SEALED this 6th day of November A.D., 1957.

"ALLISON HONER Co. By————. SEABOARD SURETY COMPANY By B. H. Mather (executed in five counterparts) Attorney in Fact.

"The Premium on this Bond is $———— Included in charge for Performance Bond."

[4]This statement is subject to what is later said herein as to the first subcontractor.

available to those who perform labor or furnish material on public works (*Cooley* v. *Freeman,* 204 Cal. 59 [266 P. 545]), the provisions of the Public Works Act requiring a bond were obviously enacted to create a fund in lieu of the building or work itself against which materialmen and laborers might proceed as an additional and contemporaneous remedy. The bond required is not a voluntary bond but a statutory bond (*Williamson* v. *Egan,* 209 Cal. 343, 344 [287 P. 503]; *Continental Nat. Bank* v. *Republic Cas. Co.,* 202 Cal. 586, 589 [262 P. 300]), and affords an additional or cumulative remedy.''

Page 738: ''The action upon the statutory bond is not in any sense based upon the personal liability of the contractor but is based upon the obligation of the bond, since the bond provides a separate and distinct and statutory remedy. The obligation of the bond, therefore, is enforceable without reference to any contract between the contractor and the materialman.'' There was no contractual relationship between Allison Honer (the bond ''principal'') and Powers.

It seems to be settled law that in an instance of true suretyship defenses (e.g., estoppel) arising in favor of the principal are available to the surety. That there is not here present a true suretyship will be shown, but for the moment it will be assumed that there is one. Estoppel of Powers to make a claim against the principal, Allison Honer, if one were established, would also be a good defense to an action against the surety upon the bond. But there is no estoppel shown here, for Allison Honer was not prejudiced by any reliance upon the release given by Powers and prejudice is of the essence of estoppel *in pais.* (*Estate of Bloom,* 213 Cal. 575, 581 [2 P.2d 753]; *Clark* v. *Lesher,* 46 Cal.2d 874, 885 [299 P.2d 865]; *Moss* v. *Underwriters' Report, Inc.,* 12 Cal. 2d 266, 273 [83 P.2d 503]; 18 Cal.Jur.2d § 12, p. 411; 31 C.J.S. § 74, p. 276.)

A sub-subcontractor has no agreement with the general contractor and the latter owes him nothing—regardless of nonpayment by his immediate employer. A labor and material bond is a primary and direct obligation to materialmen (and sub-subcontractors) without regard to the original prime contract. (*Lewis & Queen* v. *S. Edmondson & Sons,* 113 Cal.App.2d 705, 707 [248 P.2d 973]; *Cooley* v. *Freeman,* 204 Cal. 59, 61-62 [266 P. 545]; *Patten & Davies Lbr. Co.* v. *McConville,* 219 Cal. 161, 171-173 [25 P.2d 429]; *Pneucrete Corp.* v. *United States Fid. & Guar. Co., supra,* 7 Cal.App.2d

733, 736.) ■ Just as the materialman or sub-subcontractor has no right to a personal judgment against the owner of a private work upon foreclosure of his mechanic's lien (*Roberts* v. *Security T. & S. Bank,* 196 Cal. 557, 573-574 [238 P. 673]; *Builders' Supply Depot* v. *O'Connor,* 150 Cal. 265, 267 [88 P. 982, 119 Am.St.Rep. 193, 17 L.R.A. N.S. 909]), so those same claimants have no personal claim against the general contractor upon a public improvement. (*Hub Hardware Co.* v. *Aetna Acc. etc. Co.,* 178 Cal. 264, 267 [173 P. 81].) This is due to lack of privity of contract.

In the case of a private job the materialman or sub-subcontractor may look to a lien upon the owner's property or to a personal claim against the subcontractor who hired him, but not to the landowner himself for payment of his claim. (*Roberts* v. *Security T. & S. Bank, supra; Builders' Supply Depot* v. *O'Connor, supra.*) ■ Upon a public work there can be no lien upon the land and the statutory materialmen's bond (Gov. Code, § 4200) has been provided as a substitute protection for the materialman or subcontractor. Instead of a right against the land he has a claim against an approved surety. But he has no valid claim against anyone (such as owner or general contractor) with whom he has no contractual relationship. Of course, he has the right to file a stop notice pursuant to section 1190.1, Code of Civil Procedure, and thus effect an equitable garnishment in the hands of the owner of any money payable but as yet unpaid to the general contractor (41 Cal.Jur.2d § 53, p. 435), but that does not spell personal liability of the general contractor to the sub-subcontractor or the materialman (*Los Angeles Stone Co.* v. *National Surety Co.,* 178 Cal. 247 [173 P. 79]; *Hub Hardware Co.* v. *Aetna Acc. etc. Co., supra,* 178 Cal. 264).

■ Powers' sole contract was with Clark Company, a subcontractor, and hence Powers had no right to proceed against Allison Honer for recovery of its compensation. So when Allison Honer paid Clark Company what was due it the presence or absence of a release from Powers was inconsequential; that payment discharged Allison Honer's sole obligation and the same payment if made without a Powers release would have had the same effect. Whether Allison Honer had the right to pay by joint check to Clark Company and Powers is immaterial; in foregoing that claimed right Allison Honer suffered no detriment, for the check payable to Clark alone discharged Allison Honer's full obligation.

That firm having suffered no prejudice through the transaction, no estoppel could arise in its favor or to the benefit of the surety company.

The foregoing assumes a true principal and surety relationship, but the fact is that none existed except with the first subcontractor, Clark Company. " '[T]he undertaking of a guarantor or surety is to protect the promisee against loss or damage through the failure of a third person to carry out his obligations to the promisee.' (16 Am. & Eng. Ency. of Law, 168.) Another distinction between the two is that the promise in an indemnity contract is an original and not a collateral undertaking (22 Cyc. 80), while a contract of guaranty is a secondary and not a primary obligation and can exist only where there is some principal or substantive liability to which it is collateral. 'If there is no primary liability on the part of the third person, either express or implied, that is if there is no debt, default or miscarriage, present or prospective, there is nothing to guarantee, and hence there can be no contract of guaranty.' (28 C.J. 887.)" (Somers v. United States Fid. & Guar. Co., 191 Cal. 542, 547 [217 P. 746].)

The undertaking before us is a materialmen's bond and was given pursuant to the command of section 4200, Government Code (quoted in footnote 1 hereof), it must contain the provisions prescribed by section 4204, and is available to all persons entitled to file claims under section 1192.1, Code of Civil Procedure (Gov. Code §§ 4205, 4206).

Section 1192.1, Code of Civil Procedure, provides that claims may be filed by materialmen, laborers and subcontractors—everyone furnishing labor or material to the job except the prime contractor—which means that all except the prime contractor are protected by the public works bond given under section 4200, Government Code. Normally the prime contractor would protect himself by exacting from his first subcontractor a bond to protect him against claims arising in favor of laborers and materialmen employed by the subcontractor (see 41 Cal.Jur.2d § 66, p. 442) ; such a provision was carried into section 4204 by a 1961 amendment reading: "The contractor may require of his subcontractors a bond to indemnify the contractor for any loss sustained by the contractor because of any default by the subcontractors under this section." That of course would be a faithful performance bond of the subcontractor. But the one now under consider-

ation is strictly a statutory bond inuring to the benefit of subcontractors, materialmen and laborers, not the general contractor or the public agency owning the land.

Counsel for respondent stress the first paragraph of the instant undertaking which purports to bind Allison Honer as a principal and they refuse to recognize the limitation contained in the condition of the bond—that the surety will pay, not that the "principal" will pay. This is the same limitation which is expressed in section 4204. This bond is given for the benefit of persons with whom the general contractor has no contractual relationship (except the first subcontractor, Clark Company). The reason is plain. All moneys agreed to be paid to the subcontractor are intended and agreed to cover all labor and materials furnished by or for him upon his part of the work; he is to pay for the same; and there is neither legal nor moral obligation upon the general contractor to do so.

The one at bar is strictly a statutory bond and must be construed as such; any surplusage over and above the requirements of the statute must be disregarded. Such is the established rule. *Miles* v. *Baley,* 170 Cal. 151, 158 [149 P. 45] : " ' "Where a statute provides that an official bond shall be given in a certain penalty and contain certain provisions, if the principal and surety voluntarily enter into a bond in a greater penalty or which contains more onerous conditions, the bond will be binding at least to the extent of the statutory requirements. In such case, the conditions in excess of the statutory requirements may be regarded as surplusage and the bond sustained as to the others." (Brandt on Suretyship and Guaranty, 3d Ed., sec. 617; *Board of Education* v. *Grant,* 107 Mich. 161 [64 N.W. 1050] ; *Central Irr. Dist.* v. *Delappe,* 79 Cal. 351 [21 P. 825].)' " The cited Michigan case says (64 N.W. at p. 1050) : "It has been frequently held that, in the absence of a prescribed statutory form and declaration that bonds not in accordance therewith shall be void, if a bond be taken under a statute, with a condition in part prescribed by statute, and in part not so prescribed, yet if it be clearly divisible, a recovery may be had upon it for a breach of the part prescribed by statute. The superadded part may be rejected as surplusage."

Pertinent here is the following language of *Bowman* v. *Santa Clara County,* 153 Cal.App.2d 707, 715 [315 P.2d 67] : "The defendant surety company contends that it was released

from any obligation toward Bowman when he changed the principal's obligation toward him upon his return to work on August 28 under the new arrangement as found by the court.

"The answer is twofold. The first answer is that this is a statutory bond which the contractor is required to give for payment of claims of workmen, material men and suppliers of equipment. Any such claimant acquires a lien on the assessment and on the bond and may sue upon the bond. (See Sts. & Hy. Code, §§ 5293 and 5297.) The bond has a dual purpose, protection of the public agency concerned and of the workmen, material men and suppliers. It is not geared to the specific terms of any particular agreement that the contractor has or may execute with any particular workman, supplier, or material man. It is in that regard unlike the ordinary suretyship contract whereby one person guarantees the faithful and punctual performance of a particular contract which his principal has entered into with another person."

*Olson* v. *Glens Falls Ins. Co.*, 181 Cal.App.2d 165 [5 Cal. Rptr. 233], was an action against the surety upon a bond given by a school of cosmetology pursuant to section 7398, Business and Professions Code. Plaintiff sought damages caused by negligence. The court held that the complaint did not state a cause of action but could be amended to sustain an action for recovery of items prescribed by the statute, namely, tuition paid plus costs and a reasonable attorney fee.

The court said, at page 169: "It is now well settled that a bond such as this is a statutory bond, not a common-law bond, and that such an undertaking 'can be no broader than the terms contained therein, read in connection with the terms of the statute applicable thereto.' [Citation.] Moreover, such a bond is construed as being conditioned upon faithful compliance with the particular law under which it is given, not with the law in general. Liability on such a bond does not extend beyond the terms of the act. This rule was firmly established in a series of cases dealing with brokers' bonds given under the Corporate Securities Act. [Citations.] The same rule has been applied to bonds given under the Public Works Acts [citations]; to bonds given under the Real Estate Brokers Act [citations]; and to bonds of public officials [citation].

"The plaintiff is one of the persons for whose benefit the bond was given, being a student at the bonded school. But the statute and the bond both provide that it guarantees com-

pliance by the school with division 3, chapter 10, of the Business and Professions Code, and performance by the school of contracts by the school to furnish instruction. A careful examination of chapter 10 (Bus. & Prof. Code, §§ 7300-7442, the Cosmetology Act) does not disclose any intent on the part of the Legislature to impose any liability, other than such as may exist under the general laws of the state, upon a school of cosmetology for negligently injuring its pupils. Consequently, plaintiff must allege a breach of the contract for instruction if she is to recover upon the bond.''

*Charles City* v. *Rasmussen*, 210 Iowa 841 [232 N.W. 137, 139, 72 A.L.R. 638] : ''The bond in this case is a statutory bond, and the liabilities of the parties to the bond must be measured by the statute and not by the wording of the bond. The statute governing this matter is section 6003, Code 1924. . . . This statute therefore measures their liability on this bond. We have said repeatedly that any additions to such bond will be treated as surplusage, and any omission of the provisions of the statute will be read into the bond.'' To the same effect see *Community Sav. Bank* v. *Western Surety Co.*, 232 Iowa 1381 [8 N.W.2d 427, 429] ; *Narveson* v. *Schmid*, 77 N.D. 814 [46 N.W.2d 288, 292].

No obligation attached to Allison Honer through this instrument. The surety became liable for all legitimate claims of subcontractors and others down the line, laborers and materialmen. As the debt was not the debt of Allison Honer (except to Clark Company) the bond did not create the secondary liability of a surety (except as to Clark Company), but a primary obligation of the surety company. The California cases are plainly to this effect.

*Los Angeles Stone Co.* v. *National Surety Co.*, 178 Cal. 247 [173 P. 79], was an action upon a materialman's bond given in a Vrooman Act proceeding. Plaintiff sought to recover for labor and materials furnished and used subsequent to expiration of the time prescribed for doing the work. Affirming a judgment for plaintiff the court said, in part: ''No lien for materials or labor attaches to public improvements, and the purpose clearly intended by the legislature in requiring the giving of such bond was to provide a security for materialmen and laborers to which they could confidently look for protection against loss.'' (P. 249.) ''The obligation of the surety does not depend upon the validity of the contract or the faithful performance thereof by the contractor. It exists inde-

pendently of such facts. The covenant is that in case the principal fails, not in the performance of his contract with the city, but in his obligations, express or implied, to pay for materials furnished in doing the work *described in his contract* with the city, the surety will pay them. 'The surety is charged with notice that he is entering into what is in a very proper sense a public obligation and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee and with respect to whom the latter is a mere trustee.' (*Equitable Surety Co.* v. *United States,* 234 U.S. 448 [58 L. Ed. 1394, 34 S. Ct. 803].) Hence, the question as to whether the contract under which the work is done be a valid one or whether the contractor fails to perform it according to its terms and specifications entitling him to an acceptance of the same as completed is no concern of the persons furnishing materials for the work. Unaffected by irregularities in the procedure or defects which render the contract void, the materialman may look to the covenant of the surety, which, in effect, is an express promise in case of failure so to do by the principal to pay any and all debts of the contractor in so far as they are incurred for labor and materials furnished in performing the work. (*French* v. *Powell,* 135 Cal. 636 [68 P. 92].)'' (P. 250.) ''The bond on the part of the Surety Company must be deemed an independent contract, whereby it agreed, subject to payment by the principal therein named, to pay for labor and materials furnished the contractor in doing certain street work specified in a contract with the city therefor, and the right of a materialman to recover thereon is unaffected by the fact that the materials constituting the subject of the action were furnished and used in completing the work under an extension of time for so doing made by the board of public works which, by reason of the time of completion having expired, such board had no power to make. . . . This contention is based upon the claim that since the contract as originally drawn fixed the time for the performance thereof, the extension granted constituted a material alteration of the contract, by reason of which, since the surety is entitled to stand upon the strict terms of his contract, it is exonerated. The principle invoked has no application to the bond under consideration, for the reason that, as heretofore stated, the surety's obligation is not for the performance of the contract so claimed to have been altered, but independent thereof and given for a wholly dif-

ferent purpose. (*United States Fidelity & Guaranty Co.* v. *United States*, 191 U.S. 416 [48 L. Ed. 242, 24 S. Ct. 142].) The covenant contained in the bond is not for the benefit of the city as a party to the contract for doing the street work, but for the benefit of all persons furnishing labor and materials to the contractor for doing the same." (P. 251.) "While these findings dispose of appellant's contention, we may say that the rule which permits a surety to stand upon his strict legal rights should not be construed as limiting the benefits of a bond of this character to those only who supply labor and materials directly to the contractor. The covenant in the bond should be read in the light of the statute, the purpose of which was to protect those who furnish labor and materials for work described in the contract and not the particular engagements under which the work is done." (P. 252.)

*Hub Hardware Co.* v. *Aetna Acc. etc. Co., supra,* 178 Cal. 264. Materialmen's bond had been given in a proceeding under the Improvement Act of 1911. In an action against the surety company it was contended by defendant that its liability did not extend to creditors of the assignee of the contract. The court said, in part: "Statutes upholding liability inuring to the benefit of those with whom the person bound has no contractual relation have been repeatedly sustained. If the surety makes the contract with the law before him, the law enters into and becomes a part of the agreement. [Citations.] In this case the surety did bind itself, in conformity with the requirement of the statute, to pay for any materials furnished to be used in the described work. Clearly, the obligation was not merely for the benefit of the contractor. That such contracts as the one made by Paonessa and the city are assignable may not be doubted. [Citation.] It has been held that such an action as this is not based upon the personal liability of the original contractor, but upon the obligation of the bond. [Citation.]" (P. 267.)

*Sherman* v. *American Surety Co.,* 178 Cal. 286 [173 P. 161]. Action by assignee of certain materialmen against the surety on the materialmen's bond. Loftus was the contractor and claims of Los Angeles Manufacturing Company and Long Brothers were disallowed below. Neither of these companies had filed a stop notice but each gave a release to the city (owner); the city paid Loftus but he did not pay those claimants. The court in reversing held that they had no claim upon money owing from the city to Loftus because they had

not filed any stop notice, that they had no claims to release, and said at page 292: "Neither the Manufacturing Company nor Long Brothers had any claims upon these funds which could be the subject of the so-called releases. The service thereof, in the absence of any claim at the time having been filed by such parties the effect of which would be to impound the moneys due to Loftus, was, since unnecessary in enabling him to collect that which was due to him, ineffectual and inoperative for any purpose, hence, the case as presented to our minds is exactly the same as though these so-called releases had never been executed. . . . Upon completion of the wells, and in the absence of the filing of any claims, it was the duty of the city to pay Loftus in accordance with the terms of the contract. Long Brothers and the Los Angeles Manufacturing Company were strangers to this contract, and having filed no claims for labor and materials furnished in performing the contract, had no interest in or claim upon the fund to be released or in regard to which an agency could be created. The fact that the city prior to the filing of the claims of Long Brothers and Los Angeles Manufacturing Company paid Loftus nearly six thousand dollars on account of the work done which was in accordance with the terms of the contract could not impair their right under the statute and the bond given in pursuance therewith to file their claims within the ninety days and look to the surety on the bond for payment, limited, of course, by the amount specified in the bond for which the surety was liable."

Volume 41, California Jurisprudence 2d section 77, page 453: "And where a materialman, before filing a notice to withhold money due the contractor, authorizes payment to the contractor by the public entity and purports to release it from all claims and demands, the liability of the surety on the labor and material bond is not released. This is so because the materialman can have no claim on the money due the contractor that could be the subject of release by him until he files a stop notice."

There is no basis here for attributing to the surety company any defense, such as estoppel if there were one, which may have arisen in favor of the general contractor, Allison Honer.

*Flickinger* v. *Swedlow Engineering Co.,* 45 Cal.2d 388, 394 [289 P.2d 214], and *Lewis & Queen* v. *N. M. Ball Sons,* 48 Cal.2d 141, 155 [308 P.2d 713], upon which appellant relies are not opposed to these views. It is "well to keep in mind the

fact that '[i]t is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court.' (*Porter* v. *Bakersfield & Kern Elec. Ry Co.*, 36 Cal.2d 582, 590 [225 P.2d 223].) '[I]t is a familiar rule that expressions used in judicial opinions are always to be construed and limited by reference to the matters under consideration, and that they cannot be safely applied in their largest and most universal sense to dissimilar cases.' (*City of Pasadena* v. *Stimson*, 91 Cal. 238, 250 [27 P. 604].)'' (*Nevarov* v. *Caldwell*, 161 Cal.App.2d 762, 769 [327 P.2d 111].)

In each of these cases the controversy was between the general contractor and his subcontractor and arose under a specific agreement between them. As observed above, the bond given under section 4200, Government Code does protect the first subcontractor (one standing in the position of Clark Company at bar), and it is entitled to the claim provisions of section 1192.1, Code of Civil Procedure. This is true notwithstanding the existence of a contract between the two parties and to that extent—protection of the subcontractor—the relationship of principal and surety may be said to exist between Allison Honer and appellant surety company. That seems to be the underlying thought of the *Flickinger* opinion, *supra,* wherein the court said, at page 394: ''[A]ny right which plaintiff might have had to recover upon the bond was necessarily dependent upon plaintiff's right to recover upon his contract with Swedlow.'' The authorities cited therein relate to a true suretyship and neither the language nor the authorities cited extend any further.

*Lewis & Queen* v. *N. M. Ball Sons, supra,* 48 Cal.2d 141, held invalid the claim of a contracting partnership for recovery of its compensation because it had failed to procure the prescribed statutory license to do business. This defense was also held available to the surety who wrote the materialmen's bond under section 4200. In so holding the court said, at page 155: ''The obligation of the sureties on defendant's bonds was not to pay for labor merely by virtue of the fact that it had been expended on the parkway. It was an obligation to pay only if plaintiff established, without reference to the bond, a legal and valid claim for compensation.'' Obviously, this would be so here if Clark Company were making a claim against the surety. Having contracted to do a specified job it could not in case of default recover against Allison Honer

and, as appellant was Allison Honer's surety as to Clark Company, there could be no recovery against appellant. But that principle has no application here for appellant was not a surety with respect to Powers, a sub-subcontractor; it owed Powers an independent obligation not derived from the terms of any contract.

The true situation is well expounded in 43 American Jurisprudence section 179, page 918, as follows: ''The bond of a contractor for public works is ordinarily conditioned both for the faithful performance of the contract, or to indemnify the public body, and for the payment of laborers and materialmen, and to this extent is of a dual nature and intended for a double purpose. These two undertakings are as distinct as if contained in separate instruments.[5] The fact, therefore, that the public body may have done some act which will release the surety upon its obligation to that body does not mean that the surety is relieved of its liability under the distinct undertaking for the benefit of laborers and materialmen. No acts or omissions of the obligee or of the contractor for which the laborers, mechanics, or materialmen are not responsible, and which they do not consent to, will relieve the sureties from or affect their liability under the bond for the claims of such persons. The reason is obvious. It would not only be the grossest injustice to permit the contractor and the public authorities by any act of theirs, without the consent of such laborers or materialmen, to destroy the laborers' and materialmen's security, but would also allow the principals in the contract to set at naught the plain intention of the legislative body as expressed in the statute or ordinance requiring the bond. The rule stated produces no unjust hardship as regards the surety; he is charged with notice that he is entering into what is in a very proper sense a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee, and therefore incapable, upon general principles of equity, of bartering away, for its own benefit or convenience, the rights of the beneficiaries.

''Under the rule stated above, the unauthorized overpayment of the contractor by the public body, an unauthorized

---

[5]There is no showing in this case of the giving of any faithful performance bond such as the one which accompanied the materialmen's bond in the *Flickinger* case and as provided by § 14371, Government Code.

change in the time or manner of paying the contractor, the payment of the contractor by the public body without requiring the latter to produce receipts from laborers and materialmen, as required by the contract, or the failure of the public body to retain a certain per cent of the contract price, as required by the contract, does not release the surety on the contractor's bond from liability to laborers and materialmen, where the bond is conditioned for their benefit as well as for the protection of the public, although such acts may release the obligation to the public body. . . .

"The surety on the bond of a public contractor is not released from liability to laborers and materialmen by changes made in the original contract by agreement between the public body and the contractor, unknown either to the surety or to the laborers and materialmen, at least where the changes do not alter the general character of the work contemplated by the contract or the general character of the materials and labor necessary for its execution."

To the same effect see, *Equitable Surety Co. v. United States,* 234 U.S. 448, 457-458 [34 S.Ct. 803, 58 L.Ed. 1394]; 63 Corpus Juris Secundum section 1179, at page 875.

Discussion of other points raised by respective counsel seems unnecessary for it would merely lead to the conclusions above expressed.

The judgment is affirmed.

Fox, P. J., and Herndon, J., concurred.

A petition for a rehearing was denied June 29, 1962, and appellant's petition for a hearing by the Supreme Court was denied August 1, 1962.