CALIFORNIA ELECTRIC SUPPLY COMPANY, Plaintiff and Respondent, v. UNITED PACIFIC LIFE INSURANCE COMPANY, Defendant and Appellant.

Park & Shenk and Samuel C. Shenk for Defendant and Appellant.

George E. Hammer and Ollie M. Marie-Victoire for Plaintiff and Respondent.

MOLINARI, J.—On this appeal from a judgment in favor of plaintiff materialman against defendant surety company, the sole issue[1] before the trial court was whether notice was given as required by section 4209 of the Government Code.[2]

The pertinent facts are as follows: North Bay Construc-

---

[1] The pretrial conference order provides as follows: ''First: The court shall first try the issue as to whether or not the notice given under section 4209 of the Government Code was given as required by said section, inasmuch as the court's determination upon said issue, if adverse to the plaintiff, will be determinative of this action. Second: If the trial court finds in favor of the plaintiff on the aforesaid issues of notice, it shall proceed with the trial of the remaining issues.'' At the conclusion of the trial of the issue of notice it was stipulated by and between counsel for the respective parties that the amount due was $3,362.20. The trial court thereafter made its findings of fact and conclusions of law, and thereupon ordered judgment for $3,362.20 damages, $400 attorneys' fees, $445.22 interest, and costs in the sum of $47.50. On this appeal defendant does not challenge the trial court's finding that the reasonable value of the materials furnished and supplied by plaintiff on the construction job in question was said sum of $3,362.20, nor does it claim any error with respect to the award of attorneys' fees. The sole assertion of error by defendant is that plaintiff is not entitled to these sums because there was not sufficient compliance with section 4209 of the Government Code.

[2] Gov. Code § 4209 reads as follows: ''In any case in which the law of this State requires that a contractor for construction of a public work file a payment bond, every person to whose benefit the bond inures who has not been paid in full, other than a person who performs actual labor for wages, and who has no direct contractual relationship with the contractor furnishing said bond shall have a right of action upon the bond only upon having given written notice to said contractor within 90 days from the date on which such person furnished the last of the labor or materials for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the

tion Company (hereinafter sometimes referred to as "prime contractor"), a general contractor, entered into a contract on April 13, 1959, with the Union Sanitary District to construct a sewage biofiltration plant. United Pacific Insurance Company,[3] (hereinafter referred to as "defendant"), executed a material and labor bond on behalf of North Bay pursuant to Government Code sections 4200 et seq.[4] The prime contractor then entered into a subcontract with Hall Sloat, doing business as H. S. Electric Company (hereinafter referred to as "subcontractor"), to perform the electrical work required in the construction of said plant. From time to time plaintiff delivered materials to said jobsite pursuant to purchase orders from said subcontractor.[5]

Because of financial difficulties encountered by the subcontractor a meeting of his creditors was held in San Francisco on February 10, 1960. This informal meeting was called to decide whether a moratorium would be given subcontractor so that he could continue in business. Several of the subcontractor's major creditors attended the meeting. Also in attendance was Robert Hassing, a self-employed insurance broker and the person who wrote the labor and material bond for the prime contractor in the instant case. Various witnesses testified that Hassing attended the meeting as the representative of the prime contractor, and that Hassing did not say he was an unofficial observer or the representative of a bonding company. Hassing testified that he attended the meeting as an unofficial observer and was not authorized by anyone from the prime contractor to represent it at the meeting. Hassing further stated that he heard about the meeting from another insurance broker, but denied that he discussed with the prime contractor or anyone employed by it his possible attendance at the meeting. Hassing's testimony was in conflict with that given by Eugene Finn, who identified himself as "President, owner, and general manager" of

labor or materials were furnished. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or by personal service."

[3]Sued herein as United Pacific *Life* Insurance Company.

[4]Unless otherwise indicated, all statutory references hereinafter made are to the Government Code.

[5]Plaintiff concedes in its brief that there was no contractual relationship between it and the prime contractor.

North Bay Construction Company. Finn stated that Hassing had called him on February 9, the day before the meeting in San Francisco, to tell him about it. The evidence also shows that Hassing himself stated at the meeting that he was representing the prime contractor. The record discloses, further, that Finn stated that Hassing would have no cause to attend the meeting unless he were interested in the affairs of North Bay.

During the meeting the subcontractor distributed a previously prepared schedule listing the amounts due his creditors. The chairman of the meeting gave a copy of this schedule to all of those in attendance. This schedule was a three-page document, at the top of which was the name ''H. S. Electric Company.'' It set forth the subcontractor's entire operation, including the location of each job, the awarding authority and the completion date. The Union Sanitary District project was generally designated as ''Railroad Avenue and Landing Road.'' The subcontractor's job number for this project was Number 140. The subcontractor had inserted the job numbers of the various jobs on this master list, and the representatives at the meeting discussed and wrote them down on their copies of the schedule. The subject schedule showed prime contractor as the ''awarding authority'' on two jobs, one bearing the number 140, aforesaid, and the other Number 154 for a job located in Fremont.

James Koenig, credit manager of plaintiff supplier, stated that he attended the creditor's meeting in San Francisco. He also stated that the amount claimed by plaintiff was designated on its records for materials furnished in connection with subcontractor's ''Job 140.'' He also stated that he personally gave Hassing a copy of the subcontractor's schedule in order to serve him, as the representative of the prime contractor, with a notice of intent under Government Code section 4209. Hassing testified that he could not recall who had handed him the schedule. He later recalled that Koenig had requested that he forward the subcontractor's schedule to the prime contractor. Hassing did send the schedule to the prime contractor. Finn acknowledged the reception of the subcontractor's statement, and stated that it was the kind of document with which he was familiar in his business activities. He further stated that he read the statement carefully and that it indicated to him that the subcontractor owed money on the work North Bay had contracted to perform. Finn claimed that he had no knowledge of ''job number

140'' included in the subcontractor's schedule. He did state, however, that the designation ''Railroad Avenue and Landing Road, Fremont, California'' on the statement had reference to the Union Sanitation District public works job on which he was the prime contractor. The trial court, in an effort to determine what the schedule meant to Finn, questioned him at length, and elicited from him the statement that the figure ''140'' could be tied in with the job here in question.

On the basis of the foregoing evidence, the trial court found that Koenig, on behalf of plaintiff, personally served on Hassing, as agent for the prime contractor, a written notice containing the amount claimed by plaintiff for the materials furnished and the name of the party to whom the materials were furnished; that said service was made within 90 days from the date on which it furnished the last of such materials; and that Hassing, at Koenig's request, forwarded said notice to Finn who received it on behalf of the prime contractor. The trial court concluded from such findings that due notice of plaintiff's claim was given the prime contractor as required by section 4209.

Defendant does not dispute the finding that Hassing was acting as the prime contractor's agent when the schedule in question was handed to him by Koenig and when he delivered it to the prime contractor;[6] nor does it contend that if such schedule suffices as the notice prescribed by section 4209 that it was not given within the required 90-day period. The thrust of defendant's contention on appeal is that the schedule in question was not a ''claim'' in the sense in which the term is used in section 4209. It is urged by defendant that the schedule is not a request for payment but merely a notice of how much was owing from subcontractor to plaintiff. Stated another way, the contention made by defendant is that there is no assertion in the schedule that plaintiff was looking to the prime contractor for payment of the amount due from subcontractor. Plaintiff's position, on the other hand, is that section 4209 does not require written notice in any particular form.

Both parties to the instant appeal agree that the language of section 4209 has been taken almost in its entirety from what is known in the construction of federal public works

---

[6]This concession was made by defendant's counsel at oral argument.

projects as the Miller Act. (40 U.S.C.A. § 270b.)[7] It is also conceded by both parties that there are no California cases which assist in the construction of section 4209, and that we should, therefore, be guided by the interpretations placed upon the Miller Act by the federal courts. We shall, therefore, approach the question before us with due regard for the principles applied by the federal cases in construing and interpreting the Miller Act.

Sections 4200 through 4210 of the Government Code are commonly known and referred to as the Public Works Act. Because the right to file a mechanic's lien does not inure against public property, this act was enacted to afford a statutory remedy to materialmen and laborers who supply work, labor or materials upon a public works job. (See *Powers Regulator Co.* v. *Seaboard Surety Co.,* 204 Cal.App. 2d 338, 344-345 [22 Cal.Rptr. 373]; *Pneucrete Corp.* v. *United States Fid. & Guar. Co.,* 7 Cal.App.2d 733, 736-737 [46 P.2d 1000].) Both the Miller Act and the public works statutes of this state have received liberal construction in order to effectuate their purposes. (*McWaters & Bartlett* v. *United States,* 272 F.2d 291, 294; *Williamson* v. *Egan,* 209 Cal. 343, 349 [287 P. 503]; *Globe Indemnity Co.* v. *Hanify,* 217 Cal. 721, 730 [20 P.2d 689]; *H. G. Fenton Material Co.* v. *Noble,* 127 Cal.App. 338, 340 [15 P.2d 884]; and see *A. L. Young Machinery Co.* v. *Cupps,* 213 Cal. 210, 213-214 [2 P.2d 321]; *Pacific Wood & Coal Co.* v. *Oswald,* 179 Cal. 712, 715 [178 P. 854]; see also 13 McQuillin, Municipal Corporations (3d ed.) § 37.209, p. 578.)

In the federal courts, the general rule is that where one having no contractual relationship with the prime contractor furnishes material or performs labor for a subcontractor, the giving of the written notice to the prime contractor within the specified time is a condition precedent to the right to maintain an action on the payment bond. (*T. F. Scholes, Inc.* v. *United States,* 295 F.2d 366, 369; *Bowden* v. *United States,* 239 F.2d 572, 577; *Coffee* v. *United States,* 157 F.2d 968, 969.) It is also established that no particular form of notice is required. All that is demanded, generally, is that the notice meet in fair measure the procedures in the statute relating to substance. (*T. F. Scholes, Inc.* v. *United States, supra,* at p. 369.) The notice should show that the designated subcontractor owes the materialman money in a certain sum,

---

[7]Section 4209 is sometimes referred to as the "Little Miller Act."

and must be served in a timely manner. Notice to the prime contractor is essential in order to enable him to protect himself against his subcontractor by withholding from him money due on his subcontract. (*McWaters & Bartlett* v. *United States, supra,* at p. 295.)

In *Scholes,* one Moore, a materialman, sent an informal letter to the prime contractor in which he expressed his intention that the letter was to serve as notice. The letter stated that Moore had leased a rock crushing unit to Truck Center, a subcontractor, and that the crusher had been used by Scholes and other prime contractors in fulfillment of their respective contracts on the subject public project. In the letter Moore stated that the unpaid balance which Truck Center owed him was $5,724.50. The letter also contained a statement whereby Moore acknowledged that possibly no one prime contractor was responsible for the charges and that he would be agreeable to negotiating a reasonable breakdown between jobs performed during the time that parts, service and rental were furnished to the named subcontractor. The court held that the notice complied with the statute because it stated in substance that Moore asserted a claim in the said amount against the several prime contractors and their respective sureties, notwithstanding it disclosed an awareness on the part of Moore that possibly no one prime contractor was liable for the entire amount.

*McWaters* presented a situation where the plaintiff supplier showed to the prime contractor, at the worksite, a small piece of paper, which was contained in a little brown book he carried on the job with him, and upon which was written an itemized statement of the amount due from the subcontractor. The prime contractor looked at the paper but did not take it with him. The materialman then orally asked the prime contractor to pay the bill. The court held the notice to be sufficient, and noted that the statute does not require notice in any particular form, that it was not necessary for a valid service that the prime contractor actually have the writing in his hand, and that it was not essential that a demand be made on the prime contractor for payment.

In *Houston Fire & Casualty Ins. Co.* v. *United States,* 217 F.2d 727, the materialman orally advised the principal contractor on a public project of the former's claim against a subcontractor. The principal contractor acknowledged in writing the materialman's request for payment, the subcon-

tractor's indebtedness to the materialman, and the fact that it had not been, but must be, paid. In holding the notice sufficient, the court stated: "It is not necessary that the writing relied on be signed by the supplier, it is sufficient that there exists a writing from which, in connection with oral testimony, it plainly appears that the nature and state of the indebtedness was brought home to the general contractor. When this appears the object of the statute, to assure that the contractor will have notice, is attained and the statute is sufficiently complied with." (P. 730.) Other cases illustrative of the liberality invoked by the federal courts are *Steelcraft Manufacturing Co.* v. *Hewkin,* 148 F. Supp. 872 and *United States* ex rel. *Franklin Paint Co.* v. *Kagan,* 129 F. Supp. 331. In *Steelcraft* the materialman delivered a copy of his unpaid bill to the subcontractor who in turn, at the former's request, delivered it to the prime contractor within the statutory period. The delivery of such bill was held sufficient to constitute notice informing the prime contractor of the unpaid claim. In the *Kagan* case the materialman sent the prime contractor an informal unregistered letter regarding the unpaid bill of the subcontractor and asked for assistance. The prime contractor replied suggesting that the materialman contact the bonding company, who might help it. The court there held that the letter constituted sufficient notice, stating: "The statute requires only notice. If all this means is notice of the fact the plaintiff's bill is due and unpaid, its letter satisfied that requirement." (P. 332.)

The foregoing authorities are persuasive to the determination of the issue before us. The evidence in the case at bench shows that plaintiff's credit manager personally handed to the prime contractor's agent a copy of the schedule showing the amounts due from subcontractor to his materialmen. Koenig, plaintiff's credit manager, testified that he personally gave Hassing a copy of this schedule in order to serve him, as the representative of the prime contractor, with notice pursuant to section 4209. The trial court could reasonably infer that Koenig thus intended to give prime contractor notice that the obligation owing by subcontractor to plaintiff was due and unpaid. The trial court was entitled to infer that inasmuch as there was no contractual relationship between plaintiff and prime contractor there would be no reason for the former to deliver a copy

of the schedule in question to the latter unless plaintiff was looking to the prime contractor for payment of the subject indebtedness. It is significant that the schedule was delivered to prime contractor's representative at a creditors' meeting convened to discuss subcontractor's financial difficulties. The subject schedule was sent by Hassing to the prime contractor, and, upon receipt, was read carefully by its president and general manager who admitted he could correlate plaintiff's job number to his contract. The amount of the indebtedness owed plaintiff was clearly shown on the schedule. It also showed that subcontractor was indebted to materialmen on another job on which North Bay was the prime contractor. Finn acknowledged from the witness stand that this schedule indicated to him that subcontractor owed money on jobs wherein his company was the prime contractor. Accordingly, the nature and state of plaintiff's claim was brought home to prime contractor by the subject schedule so as to sufficiently comply with the provisions of section 4209.

The authorities cited by defendant are distinguishable. *United States* ex rel. *J. A. Edwards & Co. Inc.* v. *Peter Reiss Constr. Co.*, 174 F. Supp. 264; *United States* ex rel. *J. A. Edwards & Co. Inc.* v. *Thompson Constr. Corp.*, 172 F. Supp. 161; *Bowden* v. *United States, supra,* 239 F.2d 572; *United States* ex rel. *Old Dominion Iron & Steel Corp.* v. *Massachusetts Bonding & Ins. Co.*, 272 F.2d 73; and *United States* ex rel. *Davison* v. *York Electric Constr. Co., Inc.*, 184 F. Supp. 520, each involve situations where the interested materialman took no affirmative action with respect to notice. In each of these cases the subcontractor sent a letter to the prime contractor advising him of the amount which was owing the supplier.[8] In *Reiss* and *Thompson* the letter contained a request that the sum due the supplier be credited directly to him; and in *Bowden* that it be paid jointly to the subcontractor and the supplier. In *Bowden,* the supplier did not know of the existence of the letter until the trial; while in *Massachusetts Bonding,* the supplier did not know of the existence of the letter until several weeks later when the subcontractor wrote to him informing him that his claim had been listed with the prime contractor. In *York* a procedure was set up whereby the prime contractor received from the

---

[8]In *Reiss* and *York* the supplier also gave a direct written notice to the prime contractor but in each instance the notice was held insufficient because it was not given within the 90-day provision.

subcontractor all invoices under which payments were to be made by the prime contractor to the subcontractor and the supplier pursuant to checks requiring dual signatures. In holding these notices and procedures insufficient, the rationale of the foregoing cases is that no notice was sent to the prime contractor by or under the authority of the supplier whereby the prime contractor was informed expressly or by implication that the supplier was looking to the prime contractor for the payment of the supplier's bill. In essence these cases hold that the supplier himself must take some action to protect his interests by complying with the statute and that he is not relieved of the responsibility of giving some notice himself.

The cases of *United States* ex rel. *Noland Co.* v. *Skinner & Ruddock, Inc.,* 164 F. Supp. 616; *United States* ex rel. *Bruce Co., Inc.* v. *Fraser Const. Co.,* 87 F. Supp. 1; and *United States* ex rel. *American Radiator & Standard Sanitary Corp.* v. *Northwestern Engineering Co.,* 122 F.2d 600 are likewise distinguishable. In *Skinner,* a recital in a letter from the materialman indicated that he expected payment directly from the subcontractor upon the occurrence of an event inconsistent with its assertion of a direct claim against the general contractor. In addition, the letter was sent during the progress of the job. *Fraser* involves a situation where the supplier's complaint failed to allege that written notice was given pursuant to the statute. The court found the complaint insufficient under the Miller Act because of the failure to plead the giving of written notice and, moreover, because it alleged a contractual relationship. In *Northwestern Engineering,* the reviewing court held that invoices sent by a supplier to a subcontractor as the materials were being furnished, and in turn given by the subcontractor to the general contractor for use in arriving at the estimated payments which the government was to make during the progress of the work, were furnished as ''an ordinary commercial incident,'' and not as the basis for a claim on the bond. (P. 603.) The court particularly pointed out that the invoices merely indicated the material that had been furnished and not the amount that was owing from the subcontractor within 90 days after the last of the material had been supplied.

Defendant urges that a decision by this court upholding the judgment of the lower court will subject all general con-

tractors to the hazard of paying obligations twice where the subcontractor, after having been paid monies due and owing thereafter refuses or for any reason fails to pay his material suppliers who are privileged to bring an action upon the bond and recover, irrespective of the payment for this same material to the subcontractor.[9] This contention is without merit. ■ A labor and material bond is a primary and direct obligation to materialmen without regard to the original prime contract. ■ The action upon such a statutory bond is not in any sense based upon the personal liability of the general contractor because the materialman has no agreement with the general contractor. The action is based upon the obligation of the bond since the bond provides a separate and distinct statutory remedy. (*Powers Regulator Co.* v. *Seaboard Surety Co., supra,* 204 Cal.App.2d 338, 345; *Pneucrete Corp.* v. *United States Fid. & Guar. Co., supra,* 7 Cal.App.2d 733, 738.) ■ Accordingly, where there is no contractual relationship between the materialman and the general contractor, the latter owes him nothing, regardless of nonpayment by the subcontractor. Therefore, the general contractor cannot be subjected to double payment unless, of course, he has agreed to indemnify his surety. ■ Suffice it to say, however, such double payment may be avoided by taking notice of the provisions of section 4209 which is intended not only to protect materialmen and suppliers of labor but the general contractor as well. As said in *United States* ex rel. *J. A. Edwards & Co., Inc.* v. *Peter Reiss Constr. Co., supra,* 174 F. Supp. 264, in discussing a similar statute under the Miller Act, ''The requirement of the 90 days notice is to afford some protection to the prime contractor in making payments to the subcontractor.'' (P. 266.) The argument here made by defendant was answered in *United States* ex rel. *Hopper Bros. Quarries* v. *Peerless Casualty Co.,* 255 F.2d 137, where it was held that no prejudice results to the prime contractor if he elects to pay the subcontractor prior to the termination of the period provided in the statute. On page 144 of the opinion we find the

---

[9]In the case at bench, Finn's testimony showed that he sent subcontractor a large check around the middle of January of 1960 to pay for the material here in controversy. This payment was before the time when the last of the materials was supplied by the plaintiff supplier, and before the time when prime contractor was served by plaintiff with the schedule in question.

following pertinent language: "Undoubtedly the requirement of a notice to the contractor during the ninety day period is for the benefit of the contractor and the surety and it may enable the contractor to save himself and his surety by withholding payments from a delinquent subcontractor until his laborers and materialmen have been satisfied or by taking other steps to protect themselves."

In California, a general contractor who is awarded a contract in excess of $2,500[10] for the performance of public work is required by section 4200 to file a materialman's bond containing the provisions prescribed by section 4204. ▮ As a condition precedent to the filing of an action on such bond, any person who has no direct contractual relationship with the contractor furnishing such bond and to whose benefit the bond inures is required to serve the notice prescribed by section 4209. ▮ Accordingly, any general contractor who has posted such bond must be presumed to know that such person has 90 days from the date on which he furnishes the last of the labor or materials within which to give such notice. If he elects to pay a subcontractor prior to the expiration of the time within which such notice may be given he does so at his peril and without prejudice to the right of action upon such bond by the person to whose benefit it inures. It is convenient to note here that the prime contractor may protect himself against claims arising in favor of laborers and materialmen employed by the subcontractor by exacting from the subcontractor a bond to indemnify the general contractor for any loss sustained by him because of any default by the subcontractor. (See § 4204; *Powers Regulator Co.* v. *Seaboard Surety Co., supra,* at p. 347.)[11]

---

[10]The section was amended in 1963 by substituting the sum of $2,500 for the sum of $1,000.

[11]Although the provision that a general contractor may require a subcontractor to execute to him a bond as a matter of protection to himself as well as his own bondsmen was added to section 4204 in 1961, it appears that this right was recognized prior to such amendment. (See 41 Cal.Jur.2d § 66, p. 442; *Burr* v. *Gardella* (1921) 53 Cal.App. 377, 385 [200 P. 493].) In *Powers Regulator Co.* v. *Seaboard Surety Co.,* 204 Cal.App.2d 338 [22 Cal.Rptr. 373], the court stated: "Normally the prime contractor would protect himself by exacting from his first subcontractor a bond to protect him against claims arising in favor of laborers and materialmen employed by the subcontractor (see 41 Cal. Jur.2d § 66, p. 442); such a provision was *carried into* section 4204 by a 1961 amendment...." (P. 347; italics added.)

As regards the surety no unjust hardship results. As stated in 43 American Jurisprudence, section 179, page 919, "he is charged with notice that he is entering into what is in a very proper sense a public obligation, and one that will be relied upon by persons who can in no manner control the conduct of the nominal obligee, and with respect to whom the latter is a mere trustee, and therefore incapable, upon general principles of equity, of bartering away for its own benefit or convenience, the rights of the beneficiaries." (Cf. *Powers Regulator Co.* v. *Seaboard Surety Co., supra,* at p. 355.)

The judgment is affirmed.

Bray, P. J., and Sullivan, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 8, 1964.