[Civ. No. 27181.   Second Dist., Div. Two.   June 25, 1964.]

BONDED PRODUCTS CO., Plaintiff and Appellant, v. R. C. GALLYON CONSTRUCTION CO., INC., et al., Defendants and Appellants.

Alton G. Harmon for Plaintiff and Appellant.

Grant & Popovich and Irvin Grant for Defendants and Appellants.

ROTH, J.—On August 6, 1957, respondent and cross-appellant R. C. Gallyon Construction Co., Inc. (Gallyon) entered into a construction contract with the Saugus Union School District for the construction of an elementary school. Pursuant to Government Code, sections 4200-4210, Gallyon executed a surety bond with respondent and cross-appellant American Automobile Insurance Company (American) in the amount of $50,750. This bond provided that the surety would pay for any materials or labor not paid for by Gallyon.

Gallyon thereafter entered into a subcontract with Arthur V. Reece dba Sterling Woodcraft[1] (Sterling) for the furnishing of certain cabinets and mill work for the school project.

Sterling entered into an oral agreement with appellant Bonded Products Co. (Bonded). Bonded was then a licensed partnership and had the same name as appellant which is its

---

[1]Sterling is not a party to this appeal.

transferee corporation. Bonded, the partnership, agreed to and did furnish Sterling with formica counter tops built to Sterling's specifications at an agreed price, and in a separate contract, dated June 23, 1958, agreed to furnish labor to install the counter tops.

Prior to executing said contracts, the partners of Bonded had filed articles of incorporation with the Secretary of State on January 3, 1958, using the precise name of their partnership. The evidence, without contradiction showed that Bonded, the partnership, continued in operation until the partners thereof made an actual transfer on February 6, 1959, of the assets and liabilities to Bonded, the corporation. A contractor's license was issued to Bonded, the corporation, in July 1958. Bonded, the corporation, is appellant in this action by virtue of an assignment of the claims of Bonded, the partnership.

On February 28, 1958, Bonded, at the request of Sterling, who stated that Gallyon did in fact request it, executed a waiver of lien. This waiver released any and all liens or right to a lien upon the project and acknowledged the receipt of $1,943: the amount due on the materials. Sterling presented the waiver to Gallyon who in turn paid Sterling the $1,943.

The total amount due Bonded for material and labor was $2,193. Bonded was paid no part of this amount by Sterling.

Bonded subsequently sued Sterling, Gallyon and American for the amount due on its sub-subcontract. The trial court found that Bonded was entitled to judgment against Sterling for the total amount of material and labor; that Gallyon and American were liable for the amount due for labor; but that Bonded was estopped from recovering the amount due for materials from Gallyon and American because of Gallyon's reliance on the waiver of lien.

Gallyon and American as joint cross-appellants raise three contentions on this appeal. It is our opinion, as will be shown *infra*, that no cause of action was stated against Gallyon. (*Powers Regulator Co.* v. *Seaboard Surety Co.*, 204 Cal. App.2d 338, 346 [22 Cal.Rptr. 373].) The discussion therefore will be limited to the liabilities of American.

American claims error because Bonded was permitted to amend and allege that Bonded, the corporation, was suing as the assignee of the claims of Bonded, a licensed partnership, urging that this amendment allowed Bonded to plead a new cause of action.

It is a settled rule that an amendment to a complaint will not be permitted if it changes the cause of action. (39 Cal.Jur.2d 364.) The test in respect of whether a change has been made is set forth in *Austin* v. *Massachusetts Bonding & Ins. Co.*, 56 Cal.2d 596 [15 Cal.Rptr. 817, 364 P.2d 681]. In *Austin,* the court said at pages 600-601: "Subsequent cases held that a mere change in legal theory would not prevent an amendment from relating back but that an amendment would not relate back if it set forth 'a wholly different cause of action,' i.e., 'a wholly different legal liability or obligation.' [Citations.] . . . This test was referred to in *Wennerholm* v. *Stanford University School of Medicine* (1942) 20 Cal.2d 713, 717-718 [128 P.2d 522, 141 A.L.R. 1358], but after setting forth the modern rule permitting relation back of amendments based on the same general set of facts, the opinion concluded that no different cause of action was stated where the amendment did not essentially change the factual situation upon which recovery was predicated [Citations]." The court concluded: "The rule which makes relation back of an amendment dependent upon whether recovery is sought on the same general set of facts as those alleged in the original complaint is in accordance with the basic principle of code pleading that a litigant need only allege the facts warranting recovery."

Manifestly, the amendment in this case did not plead a new cause of action based upon essentially different facts. The amended complaint pleaded the same obligation. It merely cleared up the true legal relationship of the parties. (*Ginsburg* v. *Faraone*, 126 Cal.App. 337, 340 [14 P.2d 777].) The amendment did not place upon the defendants the burden of meeting an entirely new claim. It was properly allowed.

American next contends that the undisputed evidence establishes that the cause of action framed by the amended complaint is based on a contract entered into by the corporation which was not licensed at the time and thus estopped from suing under Business and Professions Code, section 7031.

The trial court specifically found that the contract was entered into and performed by the partnership and that the partnership's claim was then assigned to the corporation. This finding was supported by substantial evidence, to wit: the written assignment of the partnership assets and liabilities on February 6, 1959, and the testimony of Walter J.

Junak, one of the partners, that the partnership continued to operate until such time as the partnership assets were transferred to the corporation.

In *Levelon Builders, Inc.* v. *Lynn,* 194 Cal.App.2d 657 [15 Cal.Rptr. 582], (hearing denied) the contract entered into named "Levelon Builders" as the contractor and the complaint named "Levelon Builders, Inc." as the plaintiff. The contract was signed on December 23, 1957, at which time the owner had a license, but the corporation had filed its articles on November 12, 1957 and did not receive its license until February 19, 1958. The court held at pages 663-664: "There is no evidence of any fraudulent intent, nor is there any evidence that defendants were in any way damaged. . . . 'Substantial compliance with the statute is all that is required [citation], and the trial judge was correct in so holding.' [Citations.] . . . There was no fraud on the state, nor was there any violation of the state's policy regarding contractor's license.

". . . . . . . . . . . . . . .

"Where the plaintiff has substantially complied with the requirements of the state law and has proceeded in good faith to render the service required by the contract, we think the minor technical error in his procedure which did no damage to anyone, should not be used as a sword to strike down his legitimate claim. [Citations.]" (See also *Weiman* v. *Superior Court,* 51 Cal.2d 710, 713 [336 P.2d 489].)

American also contends that the defenses of release, waiver and estoppel were conclusively established by the evidence. Bonded, on the other hand, argues that the defense of estoppel is immaterial under a suit against the surety. The trial court found that there was no release or waiver of any claim or right to sue but agreed with American that Bonded was estopped because of its waiver of lien.

The nature of the surety, prime contractor, and sub-subcontractor relationship was exhaustively analyzed in *Powers Regulator Co.* v. *Seaboard Surety Co., supra,* 204 Cal.App.2d 338. (Hearing denied.) ▆ It was there held that the surety cannot claim the defense of estoppel on facts similar to those here presented, because the prime contractor owes no legal obligation to the sub-subcontractor and that the presence or absence of a release from the sub-subcontractor is inconsequential to the liability of the surety on the statutory bond since the surety's liability is a *primary obligation* to

the materialmen and laborers and not a true suretyship. Further, the bond " . . . is not geared to the specific terms of any particular agreement that the contractor has or may execute with any particular workman, supplier, or material man. It is in that regard unlike the ordinary suretyship contract. . . ." (At p. 349.) The waiver of lien here under consideration falls squarely within the holding of the *Powers* case.

American argues, however, that since no lien could be attached to a public project the effect of the waiver was to release Bonded's claim against the bond. There is no merit in this contention.

The waiver here in question did not mention American and was given at the request of Gallyon made through Sterling. There is no evidence, beyond the speculations of American, that Bonded intended to waive its claim against the bond. (*Fraters Glass & Paint Co.* v. *Southwestern Constr. Co.,* 200 Cal. 688, 693 [254 P. 1097].) If the waiver was inconsequential as an estoppel, it was equally inconsequential as a release and waiver of the bond.

It was pointed out in *Powers, supra,* at page 346: "In the case of a private job the materialman or sub-subcontractor may look to a lien upon the owner's property or to a personal claim against the subcontractor who hired him, but not to the landowner himself for payment of his claim. [Citations.] Upon a public work there can be no lien upon the land and the statutory materialmen's bond (Gov. Code, § 4200) has been provided as a substitute protection for the materialman or subcontractor. Instead of a right against the land he has a claim against an approved surety. But he has no valid claim against anyone (such as owner or general contractor) with whom he has no contractual relationship. Of course, he has the right to file a stop notice pursuant to section 1190.1, Code of Civil Procedure, and thus effect an equitable garnishment in the hands of the owner of any money payable but as yet unpaid to the general contractor (41 Cal.Jur.2d § 53, p. 435), but that does not spell personal liability of the general contractor to the sub-subcontractor or the materialman [citations]."

Since there was no privity of contract between Bonded and Gallyon it is clear the complaint stated no cause of action against Gallyon and the judgment entered against it must be and it is reversed.

However, under the clear holding of the *Powers* case, the finding that Bonded is estopped from obtaining judgment from American must also be rejected and the judgment against American is reversed with directions to enter judgment for appellant. In all other respects the judgment is affirmed.

Herndon, Acting P. J., and Ashburn, J.,* concurred.

A petition for a rehearing was denied July 21, 1964, and the petition of defendants and appellants for a hearing by the Supreme Court was denied August 20, 1964.

---

*Retired Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.