[Civ. No. 7118.    Fourth Dist.    Oct. 30, 1963.]

ROSSMAN MILL & LUMBER COMPANY, LTD., Plaintiff and Appellant, v. FULLERTON SAVINGS & LOAN ASSOCIATION, Defendant and Respondent.

Lind & Schmitz, Fidel Schmitz and Louis L. Selby for Plaintiff and Appellant.

Allen, Pitts & Kane and John H. Pitts for Defendant and Respondent.

McKenna & Fitting and Norman H. Raiden as Amici Curiae on behalf of Defendant and Respondent.

STONE, J.*—This appeal comes to us on an agreed statement of facts relating that Floyd McNabb obtained a building loan of $18,000 from respondent savings and loan association, to build a home on his lot in Orange County. The loan was evidenced by a promissory note secured by a first deed of trust on the property. The loan was set up under Account No. 4217, and McNabb executed a "Building Loan Agreement and Assignment of Account No. 4217." The agreement provided for progress payments to McNabb at four specified stages of completion of the residence.

After an on-site inspection, respondent paid McNabb the first progress payment on February 24, 1960, from which it deducted $783 for title fees, insurance charges, points on loan charges, and incidental costs. On March 28, 1960, respondent made an inspection of the premises and found construction had progressed sufficiently to warrant the second progress payment. After deducting a fire insurance premium and making a payment directly to a plumbing company, respondent paid the balance of the second payment to McNabb. Very little work was done after the second payment because McNabb disappeared. Respondent held the loan open pursuant to the terms of the "Building Loan Agreement and Assignment of Account," until July 28, 1960, although McNabb disappeared in April. From the fund respondent paid itself interest for the months of March, April, May, June and July.

---

*Assigned by Chairman of Judicial Council.

On April 25, 1960, appellant, a mechanic and materialman who had furnished construction materials, served a verified claim therefor and a "Notice to Withhold" on respondent, together with a bond in support of the withhold notice, as required by Code of Civil Procedure section 1190.1, subsection (h). Respondent ignored appellant's notice, and at the end of the loan period applied the balance of the building loan fund to the account of McNabb's note. The holder of the second deed of trust foreclosed, wiping out a mechanic's lien which appellant had also filed. The holder of the second deed of trust paid respondent the amount charged against the McNabb note and thus cleared from the title the first deed of trust.

■ Appellant brought this action for the amount claimed under the stop notice. That appellant's mechanic's lien was wiped out by the trust deed foreclosure has no bearing on the case since a stop notice or notice to withhold is a cumulative remedy completely independent of the mechanic's lien foreclosure procedure. (*Calhoun* v. *Huntington Park First Sav. & Loan Assn.*, 186 Cal.App.2d 451, 459 [9 Cal.Rptr. 479], and authorities cited therein.)

Briefs of counsel discuss whether the lien created by a notice to withhold under section 1190.1, subsection (h), effects "an equitable garnishment," "an equitable lien," "an assignment *pro tanto*," and whether it results in "a form of equitable subrogation." (See cases cited in *Calhoun* v. *Huntington Park First Sav. & Loan Assn.*, *supra*, at p. 459.) The section itself speaks of "the equitable garnishment effected by the claim." These arguments lead to legal niceties that are not controlling, since the pivotal question here is whether there was a construction fund or building loan fund within the sense of Code of Civil Procedure section 1190.1, subsection (h), against which the notice to withhold could take effect. If there was such a fund, the nature of the lien created is of no consequence as the section placed upon respondent a duty to withhold the amount claimed.

Code of Civil Procedure section 1190.1, subsection (h), permits a mechanic or materialman to serve upon the holder of a construction fund a notice to withhold funds to cover his claim "in any instance in which the funds with which the cost of the work of improvements are, wholly or in part, to be defrayed from the proceeds of a building loan. . . ." The notice may be given to the "mortgagee, beneficiary under

deed of trust, or assignee or successor in interest of either, or to any escrow holder or other party holding any funds furnished or to be furnished by the owner or lender or any other person as a fund from which to pay construction costs or arising out of a construction or building loan, ...'' The section further provides that if one who files a notice to withhold also furnishes a bond as prescribed therein, the holder of the fund upon whom the notice is served is under an obligation to withhold funds sufficient to answer such claim.

Respondent takes the position that the ''Building Loan Agreement and Assignment of Account'' controls the payments from the building fund, and that the notice to withhold funds is subordinate to the agreement. The owner had been paid the first two progress payments and no additional payments were due until completion of additional work. No other construction work was done; therefore, argues respondent, appellant ''caught nothing'' by its notice to withhold.

█ Unquestionably, a building fund was established within the contemplation of Code of Civil Procedure section 1190.1, subsection (h). The note and deed of trust evidenced a loan for the entire $18,000 construction cost. Respondent, in accordance with the agreement, kept the fund open from April, when the owner disappeared, until July 28, charging interest all this time. Furthermore, respondent charged the owner interest not according to the amount advanced pursuant to progress payments, but upon the entire amount evidenced by the note. And, of course, there could have been no assignment in the first instance had there not been a fund to assign.

Therefore the question narrows to whether a lender and a borrower can set up a building fund and control disbursements therefrom according to their private agreement, and thus nullify the intent and purpose of Code of Civil Procedure section 1190.1, subsection (h). █ The statute is remedial and must be liberally construed to effect its objects and to promote justice. (*Hendrickson* v. *Bertelson*, 1 Cal.2d 430, 432 [35 P.2d 318]; *Fredericksen* v. *Harney*, 199 Cal. App.2d 189, 195 [18 Cal.Rptr. 562].) It is designed to protect mechanics and materialmen who furnish labor and materials that go to enhance the value of the owner's property, an enhancement to be paid for out of the building fund. That this enhancement in value also increases the security of the lender, must not be overlooked.

■ Certainly the spirit and purpose of the statute is violated by an agreement which purports to control disbursements from a building fund by an assignment and agreement solely for protection of the lender, disregarding the rights of mechanics and materialmen.

Here, lender was concerned only with whether sufficient material and labor had gone into the structure to justify the particular progress payment. If the work was done, if the security was there, then the progress payment could be made directly to the owner pursuant to the contract. Although there was some testimony that respondent made inquiry as to whether materialmen and laborers had been paid, there was no provision in the agreement that required the owner to furnish receipted bills. Protection of mechanics and materialmen was optional with the lender, not obligatory.

■ Respondent's argument that the proceeds from the loan were assigned to it points up a violation of Code of Civil Procedure section 1190.1, subsection (h). The last sentence of the subsection reads as follows: ''No assignment by the owner or contractor of construction loan funds, whether made before a verified claim is filed, or after such claim is filed shall be held to take priority over claims filed under this subsection (h) and such assignment shall have no binding force insofar as the rights of claimants who file claims hereunder are concerned.'' The language is unequivocal; no exception is made in the case of an owner who assigns the borrowed fund back to the lender.

■ Respondent argues that if it is required to pay appellant for its labor and materials, henceforth lenders are without protection against stop notices in the event owners fail to use the progress payments of construction loans to pay their labor and materials bills. However, a lender rather than making progress payments according to the reports of its appraiser, that is, solely on the value of the construction work completed, can incorporate provisions in the ''Building Loan Agreement and Assignment of Account'' for the payment of mechanics and materialmen as a prerequisite to progress payments. Receipted bills can be made a condition precedent to payment, or in lieu of receipted bills, unpaid bills to be paid by check made payable jointly to the owner and the mechanic or materialman, or perhaps to be paid directly to the mechanic or materialman upon order of the owner.

Respondent contends that had it honored appellant's claim

it would have violated section 7156 of the Financial Code, which limits construction loan advances by savings and loan associations to a ratio of loan to construction value. Respondent cites figures indicating that if the stop notice were honored, its total advances would exceed the ratio fixed by section 7156. On the other hand, appellant cites figures showing the total would not exceed the ratio. The trial court made no finding as to this issue, but we regard this as immaterial as respondent's position is untenable in the circumstances here presented.

■ Financial Code section 7156 is designed to protect depositors against injudicious loan practices by savings institutions. The ratio formula was never intended to be a means of evading the responsibilities and obligations of the mechanic's lien laws of the State of California. It is particularly significant that a savings and loan lender can comply with both laws if it makes a conscious effort to do so. ■ Here, respondent incurred personal liability by making progress payments directly to the owner and thereafter ignoring appellant's stop notice. By analogy to attachment proceedings, the least that respondent could have done was to hold the amount claimed until the validity of the lien was determined. In contemplation of just such a situation Code of Civil Procedure section 1190.1, subsection (h), requires a bond for the protection of the fundholder, a requirement that appellant met.

■ Finally, respondent argues that the trial court lacked jurisdiction to enter a judgment in favor of appellant for the reason that McNabb, the owner, who disappeared, was not served and made a party to the action. However, McNabb was not an indispensable party since respondent incurred personal liability by its deliberate refusal to honor the stop notice. It was held in *Calhoun* v. *Huntington Park First Sav. & Loan Assn., supra,* at page 460, that: "... in an action to effect recovery from the funds subjected to the claimant's equitable garnishment, the person holding those funds must account for the amount thereof which the statute required him to withhold, and *if he fails to do so, a personal judgment may be entered against him.*" (Italics added.)

Furthermore, McNabb's interest in the real property was wiped out by the foreclosure of the second deed of trust, and his interest in the construction fund was wiped out by respondent's application of all money remaining in the fund to

the note and deed of trust on July 28, 1960. Therefore McNabb was not an indispensable party to the action within the sense of Code of Civil Procedure section 389.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 18, 1963.