[Civ. No. 21944.   First Dist., Div. One.   Mar. 3, 1965.]

GENERAL ELECTRIC COMPANY, Plaintiff and Appellant, v. CENTRAL SURETY AND INSURANCE CORPORATION et al., Defendants and Appellants.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Cooley, Crowley, Gaither, Godward, Castro & Huddleson and Thomas A. H. Hartwell for Plaintiff and Appellant.

Robert N. Zarick and Marco S. Zarick for Defendants and Appellants.

SIMS, J.—This case involves cross-appeals on the one hand by plaintiff General Electric Company, the supplier of materials to an electrical subcontractor, and on the other by defendants Central Surety and Insurance Corporation, the surety on a general contractor's bond furnished pursuant to the provisions of sections 4200-4205 of the Government Code, and Beals & Poore Construction Company, the general contractors, from a judgment awarding plaintiff a portion of its claim, interest thereon, attorneys' fees and costs.

Plaintiff seeks to recover an additional $2,087.83, which although admittedly due from the subcontractor to plaintiff was disallowed in the judgment against the contractors and their surety, and attorneys' fees for the prosecution of this appeal.

Defendants urge that plaintiff failed to give proper notice

as required by the provisions of section 4209 of the Government Code, and that in any event it was error to allow interest on the amount found to be due.

The subcontractor, although a party to the proceedings below, was found to be discharged in bankruptcy proceedings and is not involved in the appeal.

*Sufficiency of the Notice of Claim.*

The trial court found that a notice, the terms of which will hereinafter be discussed, was mailed to defendant contractor in the manner and within the time prescribed by section 4209 of the Government Code, and that said notice constituted substantial compliance with the provisions of that section.[1]

Defendants attack this finding and assert that the notice was insufficient to give rise to any right of action on the bond because (1) on its face it is a "Stop Notice" for an equitable garnishment against funds held by the owner school district for the contractor; (2) it was not expressly directed to the contractor; and (3) did not state with substantial accuracy the amount claimed.

They properly point out the difference between the rights conferred by a stop notice,[2] a mechanics' lien,[3] and the rights under a bond for payment of materials and labor on public

---

[1] Gov. Code, § 4209, provides: "In any case in which the law of this State requires that a contractor for construction of a public work file a payment bond, every person to whose benefit the bond inures who has not been paid in full, other than a person who performs actual labor for wages, and who has no direct contractual relationship with the contractor furnishing said bond shall have a right of action upon the bond only upon having given written notice to said contractor within 90 days from the date on which such person furnished the last of the labor or materials for which such claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the labor or materials were furnished. Such notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the contractor at any place he maintains an office or conducts his business, or his residence, or by personal service."

[2] See Gov. Code, § 4210; Code Civ. Proc., §§ 1190.1 and 1192.1; *Theisen v. County of Los Angeles* (1960) 54 Cal.2d 170, 177 [5 Cal.Rptr. 161, 352 P.2d 529]; *Calhoun v. Huntington Park First Sav. & Loan Assn.* (1960) 186 Cal.App.2d 451, 459 [9 Cal.Rptr. 479]; *Fredericksen v. Harney* (1962) 199 Cal.App.2d 189, 193, 196 [18 Cal.Rptr. 562]; *United States Fid. & Guar. Co. v. Oak Grove Union School Dist.* (1962) 205 Cal.App.2d 226, 230-231 [22 Cal.Rptr. 907]; and *Rossman Mill & Lbr. Co. v. Fullerton Sav. & Loan Assn.* (1963) 221 Cal.App.2d 705, 708 [34 Cal.Rptr. 644].

[3] See: Cal. Const., art. XX, § 15; Code Civ. Proc., §§ 1181, 1193 and 1193.1, and references to distinction between public and private contracts in cases in notes (2) and (4).

works where no lien is granted.[4] It is urged that since the notice is entitled "Stop Notice," and was addressed to the public agency concerned with the work and not specifically addressed to the contractor, it could only at best serve as a notice under the provisions of section 4210 of the Government Code. (See also, Code Civ. Proc., §§ 1190.1 and 1192.1.)

▪ If the remedies were in the alternative these facts and defendants' conclusions would appear to preclude recovery, but the law recognizes that the acquisition of an equitable garnishment by giving a stop notice is a remedy which is cumulative to that provided by a mechanics' lien. (*Calhoun v. Huntington Park First Sav. & Loan Assn.* (1960) 186 Cal.App.2d 451, 459 [9 Cal.Rptr. 479]; *Rossman Mill & Lbr. Co. v. Fullerton Sav. & Loan Assn.* (1963) 221 Cal.App.2d 705, 708 [34 Cal.Rptr. 644].) The same considerations should govern the relationship between the stop notice procedure and an action to recover on a bond which is required on public works to protect those who can acquire no lien on public lands. (See *Powers Regulator Co. v. Seaboard Surety Co.* (1962) 204 Cal.App.2d 338, 346 [22 Cal.Rptr. 373]; *Duncanson-Harrelson Co. v. Travelers Indem. Co.* (1962) 209 Cal.App.2d 62, 67 [25 Cal.Rptr. 718]; and *California Elec. Supply Co. v. United Pac. Life Ins. Co.* (1964) 227 Cal. App.2d 138, 144 [38 Cal.Rptr. 479].) ▪ It is concluded that the designation of the instrument as "Stop Notice" does not of itself preclude its consideration for other purposes.

Defendants point out by analogy with section 4210 that the giving of the requisite notice is a condition precedent to recovery. (See *Fredericksen v. Harney* (1962) 199 Cal.App. 2d 189, 196-197 [18 Cal.Rptr. 562]; and *Duncanson-Harrelson Co. v. Travelers Indem. Co., supra,* 209 Cal.App.2d 62, 66-67.) They urge an interpretation which would require strict compliance with the requirements of the statute by reference to rules established in cases involving a publication of a notice of hearing on a petition to form an irrigation district (*In re Central Irr. Dist.* (1897) 117 Cal. 382, 390-396 [49 P. 354]), a notice of lien recorded under the me-

---

[4]See: Gov. Code, §§ 4200-4209; Stats. 1919, ch. 303, p. 487 as amended and codified; *Pneucrete Corp. v. United States Fid. & Guar. Co.* (1935) 7 Cal.App.2d 733, 736-738 [46 P.2d 1000]; *Powers Regulator Co. v. Seaboard Surety Co.* (1962) 204 Cal.App.2d 338, 344-345 [22 Cal.Rptr. 373]; *Duncanson-Harrelson Co. v. Travelers Indemnity Co.* (1962) 209 Cal. App.2d 62, 66-68 [25 Cal.Rptr. 718]; and *California Elec. Supply Co. v. United Pac. Life Ins. Co.* (1964) 227 Cal.App.2d 138, 144 [38 Cal.Rptr. 479].

chanics' lien law (*Santa Monica Lbr. & Mill Co.* v. *Hege* (1897) 119 Cal. 376, 379-381 [51 P. 555], hereinafter discussed), and a claim against a municipality (*Ghiozzi* v. *City of South San Francisco* (1946) 72 Cal.App.2d 472, 475-478 [164 P.2d 902]).

The foregoing authorities are not controlling. In *California Elec. Supply Co.* v. *United Pac. Life Ins. Co., supra,*[5] this court reviewed the California and federal cases dealing with the subject of contractors' bonds and the requisites of a notice as a condition precedent to recovery thereon. The decision upholds a finding that the personal delivery of a schedule showing the subcontractor's obligation to the supplier from the supplier's credit manager to the general contractor's agent at a meeting to discuss the liquidation of the subcontractor's obligations was sufficient compliance with the provisions of section 4209. The opinion recites: "Sections 4200 through 4210 of the Government Code are commonly known and referred to as the Public Works Act. Because the right to file a mechanic's lien does not inure against public property, this act was enacted to afford a statutory remedy to materialmen and laborers who supply work, labor or materials upon a public works job. [Citations.] Both the Miller Act [40 U.S.C.A., § 270b] and the public works statutes of this state have received liberal construction in order to effectuate their purposes. [Citations.]

"In the federal courts, the general rule is that where one having no contractual relationship with the prime contractor furnishes material or performs labor for a subcontractor, the giving of the written notice to the prime contractor within the specified time is a condition precedent to the right to maintain an action on the payment bond. [Citations.] It is also established that no particular form of notice is required. All that is demanded, generally, is that the notice meet in fair measure the procedures in the statute relating to substance. [Citation.] The notice should show that the designated subcontractor owes the materialman money in a certain sum, and must be served in a timely manner. Notice to the prime contractor is essential in order to enable him to protect himself against his subcontractor by withholding from him money due on his subcontract. [Citations.]" (227 Cal.App.2d at p. 144.)

---

[5]Decided and published at a time subsequent to the preparation of defendants' brief.

As noted in the *Duncanson-Harrelson* case, *supra*, the requirements of section 4209 and 4210 are similar. ▇ Examination of the notice in question against the requirements of section 4209 reveals that it is addressed to the superintendent of the public agency concerned, and on its face it recites "copies" followed by the names and addresses of the contractors, bonding company and subcontractor. It is conceded that a copy was mailed to the contractors and was received by the latter at their business office by registered or certified mail with the postage prepaid on December 16, 1961, which was within 90 days from the date on which the supplier furnished the last of the materials for which claim is made. It correctly sets forth the name of the subcontractor to whom the materials were furnished and states in respect of the amount claimed that the supplies and materials furnished were of the reasonable and agreed value of $7,129.50.

Defendants' objections to the form of the notice and the fact it is not directly addressed to the contractor wither away under the light of the principles established in the *California Elec. Supply Co.* case. (See also *United States Fid. & Guar. Co.* v. *Oak Grove Union School Dist.* (1962) 205 Cal.App.2d 226, 236-238, 239-240 [22 Cal.Rptr. 907].)

▇ The discrepancy between the $7,129.50 alleged and the $4,404.15 allowed by the court is referred to as evidencing lack of compliance with the requirement that the notice set forth the amount claimed with substantial accuracy. The statutory reference is to the claim not to the amount of recovery. The complaint seeks recovery of $6,491.98. The court found that this sum was justly due from the subcontractor to the supplier, although, as hereinafter reviewed, it deducted the value of certain items and reduced the judgment to the lower sum. *Santa Monica Lbr. & Mill Co.* v. *Hege, supra,* 119 Cal. 376, does indicate that a mechanics' lien will not be enforced where the notice of lien set forth only the balance allegedly due and failed to set forth as required by law the contract price and the amounts paid therein. There is no such requirement in section 4209. ▇ In fact the law now expressly provides insofar as mechanics' liens are concerned that a lien is not invalidated for errors in the balance asserted to be due unless such mistake or error was made with the intent to defraud. (Code Civ. Proc., § 1196.1.)[6] Furthermore, even

---

[6]For a review of the provisions of this section and Code Civ. Proc., § 1190.1, subd. (e) and § 1193.1, subd. (k), which provide for the for-

before the statutory provision the innocent overstatement of a claim would not invalidate the lien. (See: *Harmon v. San Francisco etc. R. R. Co.* (1890) 86 Cal. 617, 619 [25 P. 124]; *Gordon Hardware Co. v. San Francisco etc. R.R. Co.* (1890) 86 Cal. 620, 622 [25 P. 125]; *Lucas v. Rea* (1909) 10 Cal.App. 641, 647 [102 P. 822]; *Lucas v. Gobbi* (1909) 10 Cal.App. 648, 651 [103 P. 157].)

It is concluded that the same principles should be applied to the requirement of section 4209 of the Government Code that the amount of the claim be stated with "substantial accuracy."

The finding that the notice in question constituted substantial compliance with the provisions of the Government Code is sustained.

### *Propriety of the Reduction of Plaintiff's Claim.*

Insofar as the account is concerned the findings reflect: That plaintiff maintained an account with the subcontractor referred to in the findings as "the Palisades School account"; that the subcontractor was indebted to the plaintiff for amounts posted in that account prior to July 1, 1961, in the principal sum of $2,392.82; that the invoices which gave rise to that balance had been posted to "the Palisades School account" at the subcontractor's request;[7] that materials of the reasonable value of $2,087.83 posted to "the Palisades School account" prior to July 1, 1961, at the request of the subcontractor, were not in fact installed in the Palisades Elementary School; that subsequent to July 1, 1961, the subcontractor directed and plaintiff applied payments to "the Palisades School account" totaling $2,400; that subsequent to July 1, 1961, there were posted to "the Palisades School account" invoices which totaled $7,183.32 against which the subcontractor was entitled to credits for overcharges and returns of $684.16; that the amounts so invoiced and credited were in all respects reasonable as to amount and correct, and except as to items credited represented supplies furnished and installed in the

feiture of rights in the event of a wilfully false claim, see *Callahan v. Chatsworth Park, Inc.* (1962) 204 Cal.App.2d 597, 606-610 [22 Cal.Rptr. 606]; and for superseded provisions in former §§ 1187, 1203 and 1203a, see *Henley v. Pacific Fruit etc. Co.* (1912) 19 Cal.App. 728, 732-735 [127 P. 800].

[7]The record reflects that the account in question was entitled "Palisades School Job," that it was opened March 10, 1961, and as of June 29, 1961, after miscellaneous small credits, represented items charged of $3,569.82, less a credit of $1,177.00, leaving the balance stated.

Palisades Elementary School; and that the sum of $6,491.98 remains due and owing to plaintiff from the subcontractor.[8]

On the basis of the foregoing the trial court concluded that plaintiff was entitled to judgment for $4,404.15, being the amount admittedly due less the $2,087.83 which was carried on "the Palisades School account" at the direction of the subcontractor, although the supplies represented thereby were not furnished and installed in that particular school.

The only matters in the record, in addition to the facts embraced in the findings, which bear on the question of the account are, first, that the subcontractor had several particular job accounts and a general account running with plaintiff at the same time; and secondly, that plaintiff actually furnished the supplies for which it charged and applied the charges and payments to the account solely at the direction of the subcontractor. It had no independent knowledge of the job to which to charge the items, nor is there any evidence or suggestion of connivance or unfair dealing in respect of the charges and credits.

Confusion has been engendered by the fact that plaintiff in its complaint sued for items allegedly sold and furnished between July 6, 1961, and November 25, 1961, and by the failure to distinguish between an order to credit a payment to "the Palisades School account" and an order to credit a payment to the payment for supplies actually furnished and installed in that particular construction project.

Plaintiff has alleged and proved that it furnished $6,499.16 of supplies which were used in, upon, for and about the construction of the work for which defendants are responsible, and that the sum of $6,491.98 remains unpaid from the subcontractor to it. In order to sustain the judgment defendants must show that sums paid on account by the subcontractor

[8]Computed by the trial court as follows:

| | |
|---|---|
| "July 1, 1961, posted balance of General Electric | $2,392.82 |
| Invoices incurred and posted subsequent to July 1, 1961 | 7,183.32 |
| | $9,576.14 |
| Credit for July 11, July 28, and August 25 payments | 2,400.00 |
| Balance | $7,176.14 |
| Credits for overcharges and returns represented by memorandums 8125, 8381, 8382, 8126, 8127, 8148, 7391, 7325, 7399 | 684.16 |
| | $6,491.98" |

were misapplied. Defendants in effect contend that items totaling a net sum of $10,068.98 ($3,569.82 plus $6,499.16) have been charged to the account; that of this sum $2,087.83 represents items not actually delivered to and incorporated in the school; that therefore only $7,981.15 of materials went into the work for which they are liable; and that the payments which total $3,577 made by the subcontractor should be applied only to the last sum, regardless of the status of the account at the time they were made, thereby leaving a balance in the sum of the judgment, $4,404.15.

All parties to the controversy rely on the principles set forth in *Hollywood etc. Co.* v. *John Baskin, Inc.* (1953) 121 Cal.App.2d 415 [263 P.2d 665], which construe the provisions of section 1479 of the Civil Code, particularly the recognition of the principle that payments must be applied as directed by the debtor. (121 Cal.App.2d at p. 422 and *passim*; Civ. Code, § 1479, subd. One.)

Each of the four payments credited to the account in question was a portion of a larger amount forwarded to plaintiff by the subcontractor with instructions in each case to apply a specific amount to each of ''Open Account'' or ''Reg a/c'' and specific amounts to (varying with the payments) from three to seven other designated accounts including ''Palisades School.'' Defendants urge that such instructions preclude application of the portion so designated to ''the Palisades School account,'' except insofar as the items therein were actually furnished to and installed in the school building. They overlook the fact that the charges were posted to the account on the instructions of the debtor regardless of whether they actually represented items furnished for the construction of the school. Plaintiff asserts that the payments were properly credited to the account regardless of its accuracy as a record of the disposition of the items recorded therein, and points out that the charges as well as the credits were dictated by the debtor.

■ In the absence of any estoppel in favor of the defendants, or fraudulent conduct toward them, or a showing that they, or either of them relied upon the bookkeeping agreed to between plaintiff and the subcontractor, no reason suggests itself why the creditor and debtor cannot charge and credit to an account by any designation they wish, regardless of whether it accurately reflects materials furnished to the job. There is no legal requirement that separate accounts be main-

tained. In other words, at the time of the payments the subcontractor was indebted to plaintiff in a gross sum arbitrarily divided into several accounts, each of which was made up of numerous items. The gross sum paid has been applied to these accounts in accordance with the debtor's instructions. Plaintiff should be protected in its action of having settled and discharged each of the accounts, and the particular item represented therein to the extent ordered by the debtor.
■ That the payment to the particular account should be credited to the earliest items in the account cannot be questioned. (Civ. Code, § 1479, subd. Three, 3; *Hollywood etc. Elec. Co.* v. *John Baskin, Inc., supra,* 121 Cal.App.2d 415, *passim*; *Hollywood etc. Elec. Co.* v. *Jack Baskin, Inc.* (1956) 146 Cal.App.2d 399, 402 [303 P.2d 1049]; *Oregon Cedar etc. Co.* v. *Ramos & Kohler* (1957) 148 Cal.App.2d 679, 681-682 [307 P.2d 447].)

In the first *Hollywood etc. Elec. Co.* case the opinion recites: "Defendants, as principal and surety on the labor and material bond, being the parties secondarily liable for the materials furnished by plaintiff and used in the Colfax school job, 'cannot control the application of a payment by either the debtor or creditor, and where neither party applies the payment to a specific debt the court is not required to apply it so as to exonerate such third persons'; but rather the court is required to apply it according to the formula prescribed by law. (*Bank of America* v. *Kelsey,* 6 Cal.App.2d 346, 352 [44 P.2d 617].)'' (121 Cal.App.2d at p. 430, and see also: *S. W. Towle Lbr. Co.* v. *Anderson* (1929) 208 Cal. 371, 375 [281 P. 500].) ■ So here where the creditor has applied the payment according to the formula prescribed by law, that is to the account directed by the debtor, the court cannot subsequently reverse the transaction so as to exonerate the defendants.

If the judgment stands plaintiff is not only faced with an unpaid balance on this account of $2,087.83 against a bankrupt debtor, but is barred from asserting whatever lien or similar rights it otherwise might have had against the property to which, or person to whom, the controverted supplies were delivered if such place or person had been correctly designated by the subcontractor. The debtor by placing the disputed items in the particular account, and by directing payment to that account, has ordered payment of those items. Neither the parties nor the court could reverse the transaction to show nonpayment so as to permit a lien or similar rights against

the property or persons to whom the disputed goods were actually furnished. (*Hart, Schaffner & Marx* v. *Vaughn* (1936) 17 Cal.App.2d 516, 519 [62 P.2d 377]; *Johnston* v. *Groom* (1929) 99 Cal.App. 462, 464 [278 P. 935].)

It is concluded that the trial court erred in reducing plaintiff's recovery by the sum of $2,087.83. This conclusion makes it unnecessary to further consider plaintiff's contentions that the court erred in permitting any inquiry into items which were charged to the account prior to July 1, 1961, and that the evidence is insufficient to sustain any finding that supplies to the extent of $2,087.83 were not in fact delivered to and installed in the school.

### *Interest.*

In its amended complaint plaintiff prayed for the recovery of $6,491.98 (the amount found to be due from the subcontractor) as the "total sales price (and reasonable value)" of electrical supplies together with interest at 7 per cent per annum from October 1, 1961, as to $6,244.79 of said sum, and from January 1, 1962, as to $247.19 of said sum. The trial court found that plaintiff was entitled to interest on the entire sum from September 20, 1961, from the subcontractor, but that the total obligation from it was discharged by the latter's discharge in bankruptcy. Interest was allowed on the sum found to be due from the contractors and their surety from December 16, 1961, the date on which notice of the plaintiff's claim was received by the contractor.

Defendants contend that the claim was unliquidated because it was incumbent on plaintiff to prove the reasonable value of the supplies actually supplied to the school. It may be acknowledged, as established in the authorities on which defendants rely, that where the amount due under a contract is not certain nor capable of being made certain by computation, interest cannot be allowed prior to judgment. (*Kingsbury* v. *Arcadia Unified School Dist.* (1954) 43 Cal.2d 33, 43-44 [271 P.2d 40]; *Parker* v. *Maier Brewing Co.* (1960) 180 Cal.App.2d 630, 635 [4 Cal.Rptr. 825].) Nevertheless in the instant case all amounts were fixed by the invoices and credit memoranda so the determination of the balance was merely a matter of computation.

In the second *Hollywood etc. Elec. Co.* case, *supra,* the court allowed interest commencing 30 days after the end of the month in which the supplies were delivered in accordance with the terms of the invoices despite a variance from the pleading

which allegedly was for the reasonable value of the materials furnished. In answer to the arguments made by a contractor and his surety who were held on a bond executed and filed under the same statutes as are involved in this case, the opinion recites: "The court found that the materials were reasonably worth the prices charged therefor but made no finding that they were sold under an agreement to pay the reasonable value. Defendants were obligated to pay whatever Scruggs owed. They seek to avoid their liability for interest prior to judgment by claiming there was uncertainty as to the amount of Scruggs' indebtedness. But there was no uncertainty. Where goods are billed at a stated price and are received and retained by the buyer without objection to the quantity, the quality, or the price, he must pay the amount of the seller's charges. He cannot be heard to say that the agreed price was in excess of the reasonable value nor can the seller increase his charge by claiming he did not ask enough. Scruggs had at hand complete data from which the amount of his indebtedness could be ascertained by simple mathematics. The amount of defendants' liability was not uncertain. Interest was allowable in accordance with the agreement, to be computed upon all amounts that were 30 days overdue.

"Defendants make the further claim that they did not agree to pay interest. Although there was no specific agreement respecting interest, the purpose of the bond was to indemnify the school district with respect to materials furnished to Scruggs for use in the school building for which he might not pay the supplier. The cost of the materials included the interest charges which Scruggs agreed to pay as the price of the retention of sums due plaintiff for more than 30 days." (146 Cal.App.2d 399, 404-405; see also: Civ. Code, § 3287; *Meda* v. *Lawton* (1933) 217 Cal. 282, 285-286 [18 P.2d 665]; and *Calhoun* v. *Huntington Park First Sav. & Loan Assn., supra,* 186 Cal.App.2d 451, 462-463.)

The fact that the amount set forth in the notice of claim exceeded the amount sued for and recovered does not defeat the right to interest on the amounts concededly due and ascertainable from the invoices and credit memoranda. (*Hansen* v. *Covell* (1933) 218 Cal. 622, 629-632 [24 P.2d 772, 89 A.L.R. 670]; *Lacy Mfg. Co.* v. *Gold Crown Mining Co.* (1942) 52 Cal.App.2d 568, 579 [126 P.2d 644]; and *Courteney* v. *Standard Box Co.* (1911) 16 Cal.App. 600, 612-615 [117 P. 778].)

■ In short, it appears that plaintiff may well have been entitled to interest from the defendants involved in this appeal on the same terms as it was found to be due from the subcontractors. Plaintiff not having attacked the portion of the judgment disallowing it interest for the period prior to December 16, 1961, will not be relieved on that score. Defendants, however, will have to suffer judgment including interest from December 16, 1961, on the true amount due.

### *Attorneys' Fees.*

Upon the trial of the case plaintiff was awarded attorneys' fees in the sum of $1,500 pursuant to the provisions of Government Code, section 4207, reading as follows: ''Upon the trial of the action, the court shall award to the prevailing party a reasonable attorney's fee, to be taxed as costs, and to be included in the judgment therein rendered.''

In its brief it alleges further expenses in connection with this appeal and prays for a further allowance. Any examination of whatever merits there may be to plaintiff's plea is confronted by *Burr* v. *Pacific Indem. Co.* (1942) 56 Cal. App.2d 352 [133 P.2d 24], wherein the words '' 'upon the trial' '' in a similar statute were literally construed to limit the allowance to services rendered in the trial court. (56 Cal. App.2d at p. 362.) The same construction has been adopted for the provisions of section 4207. (*Lewis & Queen* v. *S. Edmondson & Sons* (1952) 113 Cal.App.2d 705, 709-710 [248 P.2d 973].)

In each of the foregoing cases the successful plaintiff sought additional attorneys' fees for protecting his judgment by successfully resisting an appeal. In this case plaintiff not only has protected his gains at trial, but has established a right to further recovery. The second *Hollywood etc. Elec. Co.* case, *supra,* presented the situation where the case was remanded for a new trial. The opinion states the problem and its solution as follows: ''The next assignment of error is that the court erred in awarding plaintiff a $4,000 attorney's fee. The award was based upon section 4207 of the Government Code. That section provides that in an action brought upon a contractor's bond which is required by section 4200, the prevailing party shall be entitled to a reasonable attorney's fee to be taxed by the court as costs. The bond contains a similar provision. At the conclusion of the trial, the court requested testimony as to the value of the services rendered by plaintiff's counsel, and after a hearing, it found that $4,000 was a rea-

sonable fee for services performed in filing and prosecuting the action, including the two trials, *but exclusive of the prior appeal.*

"Defendants argue that since plaintiff was not the prevailing party at the first trial, it cannot properly be awarded a fee for attorney's services rendered during that trial and that the $4,000 should be reduced by half. The argument is without merit. It is not questioned that the services were competently performed or that they were necessary to plaintiff in establishing its rights under the bond. Plaintiff should have prevailed in the first trial. Neither party can be said to have prevailed in the action until judgment was entered for plaintiff at the conclusion of the second trial. We see no reason why the burden of a portion of plaintiff's attorney's fees should be shifted from defendants to plaintiff when, through no fault of plaintiff, and due to error of the court, induced by defendants, a second trial became necessary." (146 Cal.App.2d 399 at pp. 402-403; italics added.)

■■■ The italicized words may be taken to show consideration of the principle first referred to herein. Although no attorneys' fees may be allowed for plaintiff's expenses on this appeal, the fact remains that the sum heretofore allowed was predicated upon the recovery of a sum less than that to which it was entitled. Regardless of whether a new trial is necessary, plaintiff is entitled to have the trial court consider the additional amount in fixing attorneys' fees. ■■■ It is axiomatic that the amount involved and the benefits resulting to the client must be considered in determining the reasonableness of an attorney's fee. (*Cline* v. *Zappettini* (1955) 131 Cal.App.2d 723, 728 [281 P.2d 35], referring to Canon 12 of the Canons of Professional Ethics of the American Bar Association.) It cannot be determined here what weight the trial court may have given to these factors, or whether or not an increase in the amount of the recovery would lead the trial court to a different award in the light of all other factors it properly considered.

The recomputation of the amount of the judgment might be undertaken summarily by a modification and affirmance by this court of the judgment as rendered. (*Hansen* v. *Covell, supra,* 218 Cal. 622, 632-634; *Bank of America etc. Assn.* v. *Kelsey* (1935) 6 Cal.App.2d 346, 354-356 [44 P.2d 617]; and see *Calhoun* v. *Huntington Park First Sav. & Loan Assn., supra,* 186 Cal.App.2d 451, 463.) Nevertheless, the necessity of hav-

ing the lower court reevaluate the amount of attorneys' fees in the light of the additional sum recovered suggests that the case be reversed and remanded with directions. (See: *Deacon v. Deacon* (1929) 101 Cal.App. 195, 203 [281 P. 533].)

The judgment is reversed with costs on both appeals to plaintiff and with directions to the trial court to amend its conclusions of law and enter a modified judgment for plaintiff against the defendants' contractor and surety for the sum of $6,491.98 plus interest at the rate of 7 per cent per annum from December 16, 1961, its costs of suit to be taxed, and such sum as reasonable attorneys' fees for services in the trial court as may be reappraised in the light of the additional recovery.

Sullivan, P. J., and Molinari, J., concurred.