Opinion
COLE, P. J.
Sevkija Vrgora was the general contractor on a job for the Los Angeles City Unified School District. American Bonding Company issued his labor and material bond. They are the appellants here. “220 Electric,” not a party to this appeal, was an electrical subcontractor for Vrgora. It purchased some materials from Fidelity Sound Systems, Inc. (Fidelity), the respondent. Vrgora paid 220 Electric for the materials but the latter did not pay Fidelity. On May 7, 1975, Fidelity filed a stop notice with the school district and on May 14, 1975, the contract section of the district forwarded to the claims paying section a memorandum regarding the stop notice. Appellants, among others, received copies of this memorandum, which went by ordinary and not by certified or registered mail. A notice of completion was recorded September 3, 1975. It states “Physical Completion of work 1-23-75.” It also states, although the parties fail to mention this fact, that “the contract has been completed and was accepted by the Board of Education on the 28th day of August, 1975.” On March 2, 1976, the school district’s contract section sent a memorandum to the claims paying section releasing the notice to withhold which had been based on Fidelity’s stop notice. Copies of the memorandum went to appellants. The reason stated for the release was *Supp. 17 “Failure of Claimant to commence court proceedings to enforce the claim and to give the District timely notice thereof. (CC3210 and 3211.)” The instant action was commenced on February 3, 1976.
Fidelity sued appellants for the money owing to it and received judgment. Appellants urge reversal on two separate grounds: (1) The action was barred by the statute of limitation set forth in Civil Code section 3249.[1] (2) Fidelity failed to comply with the preliminary bond notice requirements of section 3091, and thus is disenabled from maintaining the action. Neither contention is well founded. We affirm.

Statute of Limitation Issue

Resolution of the statute of limitation question requires a circuitous trip through the laws relating to claims by materialmen on public works, interspersed in the mechanics’ liens statutes. (§§ 3082 through 3267.) Our trip begins with the statute of limitation here applicable, section 3249:
“Suit against the surety or sureties on the payment bond may be brought by any claimant, or his assigns, at any time after the claimant has furnished the last of the labor or materials, or both, but must be commenced before the expiration of six months after the period in which stop notices may be filed as provided in Section 3184.”
The next stop is section 3184:
“To be effective, any stop notice pursuant to this chapter must be served before the expiration of: (a) Thirty days after the recording of a notice of completion (sometimes referred to in public works as a notice of acceptance) or notice of cessation, if such notice is recorded, (b) If no notice of completion or notice of cessation is recorded, 90 days after completion or cessation.”
The parties argue whether the notice of completion was properly recorded. Appellants point out that section 3093 provides for such recordation within 10 days after actual completion of a work. Thus, they argue, citing Doherty v. Carruthers (1959) 171 Cal.App.2d 214 [340 P.2d 58], the notice of completion recorded here is invalid on its face. The next *Supp. 18 step in the reasoning is that the 90-day provision of section 3184, subdivision (b), applies, so that the action had to be filed within 90 days of January 23, 1975, the date of physical completion. Respondent meets this argument head on. It argues that if the notice of completion is valid, the instant action clearly was filed in time: i.e., under section 3184 a stop notice might be filed within 30 days of September 3, 1975, when the notice of completion was recorded, and the action did not have to be brought until six months after the 30-day period, or in other words, in April 1976. Since the action was filed on February 3, 1976, it would be timely.
We note in passing that the purpose of notices of completion is to protect the owner by shortening the time period in which stop notices or mechanics’ lien claims may be filed. Therefore, when an owner delays in such filing he only injures himself, by rendering the recorded notice ineffective. It does not necessarily follow, then, that the fact that a stop notice is ineffective under section 3093 controls the statute of limitation problem which we are discussing. But, with the parties, we will assume that it does. On this basis, respondent urges, quite correctly, that a new port of call, section 3086, must be visited. We do not accept the detail of respondent’s reasoning, which is based on the false premise that the notice of completion was invalid. In our view section 3086 shows that it is valid, as follows: Under section 3093 a notice of completion must be recorded within 10 days after the completion of the work. But “completion” is itself defined by section 3086. And in the case of a public work of improvement, such as is here involved, the definition of “completion” is that it is “the date of acceptance.” We have already noted that the notice of completion sets forth that date as August 28, 1975. It follows that the notice of completion need not have been filed for 10 days thereafter. It was filed within that period.
To avoid this conclusion appellant urges that completion is not the date of acceptance because of the last clause of section 3086. We quote here the applicable last paragraph of the section: “If the work of improvement is subject to acceptance by any public entity, the completion of such work of improvement shall be deemed to be the date of such acceptance; provided, however, that, except as to contracts awarded under the State Contract Act, [citation omitted] a cessation of labor on any public work for a continuous period of 30 days shall be a completion thereof.”
*Supp. 19 The only dates which might relate to any cessation of labor which appear in the record are the enigmatic reference “Physical Completion of work 1-23-75” on the notice of completion, and the reference in the agreed statement to testimony of respondent’s president that respondent’s work dockets show the last day of work “actually performed” by respondent-to be March 28, 1975.
Neither of these dates establish a “cessation of labor” such as to require an earlier filing of the notice of completion. These dates apparently refer to actual completion of contracts for the work. As used in section 3086, actual completion of a contract is not the cessation of labor referred to in the statute. (Southwest Paving Co. v. Stone Hills (1962) 206 Cal.App.2d 548, 554 [24 Cal.Rptr. 48] (referring to predecessor § 1193.1 of the Code Civ. Proc.); Mott v. Wright (1919) 43 Cal.App. 21, 27 [184 P. 517](referring to predecessor § 1187 of the Code Civ. Proc.).)
Accordingly, the notice of completion was properly filed and the action was timely brought.

Preliminary Bond Notice Issue

“ ‘Ninety-day public works preliminary bond notice’ ” means a notice which must be given by any claimant other than one of the following: (a) A claimant who performs actual labor for wages or an express trust fund as described in Section 3111. (b) A claimant who has a direct contractual relationship with the original contractor.
“The notice is required only on public works, and is a necessary prerequisite to enforcement of a claim on a payment bond. The notice shall be in writing and shall state with substantial accuracy the amount claimed, and the name of the party to whom the claimant furnished labor, services, equipment, or materials. The notice shall be given within 90 days from the date on which the claimant furnished the last labor, services, equipment, or materials for which such claim is made.
“The notice shall be served by mailing the same by registered or certified mail, postage prepaid, in an envelope addressed to the original contractor at any place he maintains an office, or conducts his business, or his residence, or by personal service.” (§ 3091.)
*Supp. 20 Fidelity, as a “second tier” contractor who had no direct contractual relationship with Vrgora, was required to give such a notice. Instead, apparently within the 90 days provided by the statute, it filed a stop notice with the school district. The stop notice stated the precise amount claimed to be due and the name of the party (“Two Twenty Electric and Sam Vrgora Company”) to whom labor and materials were furnished. Further, it described the labor and materials (“FSS relay and annunciator panel, ultrasonic detection system installed by journeymen sound technician”). It identified the location of the work. As will be seen, the question is whether Fidelity substantially complied with section 3091. If we were contending with the stop notice itself, the answer would seem clearly to be “yes,” since the notice gave all of the information required to be contained in a section 3091 notice. Our facts are one step removed, however.
Receiving Fidelity’s stop notice the school district sent to appellants, as well as its claims paying section, a memorandum. A photocopy of it appears as an appendix, post, at page Supp. 22. Fidelity urges that this memorandum substantially satisfies section 3091, considering the purpose of the statute and the fact that appellants admittedly received a copy of the memorandum. Appellants urge that the memorandum is insufficient because (a) it is from the school district, not Fidelity; (b) it is not a notice of a claim on a payment bond and (c) it was not mailed by registered or certified mail. While appellants argue that the fact of certifying or registering mail “has a meaning beyond being a method of proving receipt” because businessmen attach added importance to documents so sent, it seems to us that the fact that the memorandum was admittedly received by appellants is sufficient to show substantial compliance with the statute insofar as the mailing requirement goes. The statute also allows personal service as well as the specified kinds of mailing. Clearly, when a general contractor and a bonding company receive a “Notice to Withhold Against Contract” in connection with a project in which they are involved and on which their names appear, their attention has been sufficiently attracted.
We turn then to the other two defects urged by appellants to see if substantial compliance with section 3091 has occurred. The applicable cases, relied upon by all of the parties here, are General Electric Co. v. Central Surety & Ins. Corp. (1965) 232 Cal.App.2d 590 [43 Cal.Rptr. 48] and California Elec. Supply Co. v. United Pac. Life Ins. Co. (1964) 227 Cal.App.2d 138 [38 Cal.Rptr. 479], These cases each dealt with Government Code section 4209, the statutory predecessor to section 3091. The *Supp. 21 terms of the former statute were in all essential respects the same as those of section 3091. In California Electric the question was whether a general contractor and his bonding company received adequate notice under the statute when, at a meeting called to discuss the financial affairs of a subcontractor which had ordered materials from plaintiff, a representative of plaintiff handed to a representative of the general contractor a copy of a schedule previously prepared by the subcontractor which listed the amounts due the subcontractor’s creditors. The appellate court concluded, after analyzing federal cases which construed a federal statute on which Government Code section 4209 was based, that the document sufficiently complied with the statute. These cases established “that no particular form of notice is required. All that is demanded, generally, is that the notice meet in fair measure the procedures in the statute relating to substance .... The notice should show that the designated subcontractor owes the materialman money in a certain sum, and must be served in a timely manner . . . .” (227 Cal.App.2d at pp. 144-145.) Tested by this requirement the schedule measured up because it gave the general contractor enough information for it to protect itself against having to pay twice for the amount claimed.
In General Electric Co. v. Central Surety & Ins. Corp., supra, 232 Cal.App.2d 590, the plaintiff material supplier issued a stop notice to a school district, just as here. A copy was mailed to the general contractor by registered or certified mail, unlike the present case. Also unlike the present case, however, the notice claimed that $7,129.50 was due while the ultimate amount allowed was far less ($4,404.15). The court rejected the argument which is also made here—that the notice was a stop notice and not the notice contemplated by the statute. Innocent overstatement of the amount was likewise disregarded and the court stated that “Defendants’ objections to the form of the notice and the fact it is not directly addressed to the contractor wither away under the light of the principles established in the California Elec. Supply Co. case . . . .” (232 Cal.App.2d at p. 596.)
So here. Appellants received from the very public agency which was to pay their bills a notice that the precise amount of Fidelity’s claim (plus an additional 25 percent for legal fees) was to be withheld on account of a claim filed by Fidelity on account of “Alterations to First Floor 14th Street Building” in connection with the particular contract at issue. The purpose of the statute is to alert the general contractor (and his bonding company) that someone with whom the contractor had no direct *Supp. 22 relationship is asserting a claim nevertheless. (California Electric at p. 149.) It is true that the school district’s memorandum did not show the name of the subcontractor (220 Electric) with whom Fidelity had contracted. But it certainly did enable appellants to inquire into the subject if they cared so to do. We hold that the notice complied substantially with section 3091.
The judgment is affirmed.
Bigelow, J., and Ibáñez, J., concurred.
APPENDIX
LOS ANGELES CITY UNIFIED SCHOOL DISTRICT
ROBERT G. BARNES
Business Division Business Manager
HARRY M. REDOGLIA
May 14, 1975 Deputy Business Manager
To: Claims paying Section, controlling division
Attention: Mr. John D. Shea, Jr. Head Accountant
FROM: CONTRACT SECTION, BUSINESS DIVISION
KINGSBURY T. JACKSON, Contractual Relations Supervisor
subject: NOTICE TO WITHHOLD AGAINST CONTRACT #741465
The following Verified Statement of Claim has been filed against the Contract. Accordingly, the total amount indicated below shall be withheld to the extent that there is, or becomes due and payable, sufficient money to cover this sum.
The sum shall be withheld until you are notified by this office to release the money.
Contractor and Description of Work: Sevkija Vrgora Business Services Center Alterations to First Floor 14th Street Building
Claimant: Fidelity Sound Systems, Inc.
Subcontractor:
Claim filed: May 7, 1975 for$ 2,966.00 $ 741.50 Plus Litigation Expenses:
TOTAL TO BE WITHHELD: $ 3,707.50
*Supp. 23 THE ORIGINAL OF THIS INSTRUMENT, FULLY EXECUTED, IS ON FILE IN THE CONTRACT SECTION OF THE L.A. CITY BOARD OF EDUCATION. KINGSBURY T. JACKSON CONTRACTUAL RELATIONS SUPERVISOR BYKTG_
Copies of this Notice are being mailed to the following:
Claimant Fidelity Sound Systems, Inc., 16540 S. San Pedro St., Carson, Ca. 90746 Contractor Sevkija Vrgora, 9152 Oneida Ave., Sun Valley, Ca. 91352 Surety American Bonding Co., 8601 Beverly Blvd., Los Angeles, Ca. 90048 Subcontractor (if applicable) Attorney (if applicable) School Building Planning Division School Services Division
BUSINESS SERVICES CENTER. 1425 South San Pedro St., Los Angeles, Calif.—MAILING ADDRESS. Box 2298, Los Angeles, Calif. 90051

Unless otherwise noted, all statutory references are to sections of the Civil Code.